MATTHEW Z. CROTTY
Crotty & Son Law Firm, PLLC
905 West Riverside, Suite 404
Spokane, WA 99201
Telephone: 509.850.7011
Facsimile: 509.703.7957
Email: matt@crottyandson.com

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SHANNON MCMINIMEE,<br><br>                    Plaintiff,<br><br>v.<br><br>YAKIMA SCHOOL DISTRICT NO. 7, and JOHN R. IRION, in his individual capacity,<br><br>                    Defendants. | **NO. 18-3073-TOR**<br><br>FIRST AMENDED COMPLAINT AND DEMAND FOR TRIAL BY JURY |

Shannon McMinimee, by and through her attorneys, alleges:

### I.      PARTIES AND JURISDICTION

1.      Defendant,   YAKIMA SCHOOL DISTRICT NO. 7 ("YSD" or the "District") is a first-class school district organized under the laws of the State of

FIRST AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL- 1

Washington and a quasi-municipal government agency located in Yakima County, Washington.

2.    Defendant, JOHN R. IRION, ("Mr. Irion") resides in Yakima, Washington and was the District's Superintendent at all times relevant to this lawsuit.

3.    Plaintiff, SHANNON MCMINIMEE ("Ms. McMinimee") is a resident of Outlook, Washington, works in Yakima, Washington, for YSD and worked under the direct supervision of Mr. Irion at all times relevant to this lawsuit.

4.    All acts complained of occurred within the Eastern District of Washington.

5.    The Federal Court for the Eastern District of Washington has personal jurisdiction over the parties and subject matter jurisdiction for the claims in this complaint pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 2617(a)(2), 29 U.S.C. § 206(d)(1), and 28 U.S.C. § 1367(a).

6.    Venue is proper in the Eastern District of Washington under 28 U.S.C. § 1391(b) because the acts and omissions complained herein occurred in the District and Defendant conducts business and/or resides there.

7.    Ms. McMinimee is not required to exhaust administrative remedies or comply with pre-filing notice of tort claim requirements regarding the Family Medical Leave Act (FMLA), Equal Pay Act (EPA), and RCW 49.52.050 Wage

Rebate Act (WRA) claims she asserts in this lawsuit.  On April 26, 2018, Ms. McMinimee served the defendants with an RCW 4.96, et. seq. notice of tort claim (dated April 25, 2018) and will move to amend her complaint to allege additional facts and claims once the sixty-day post-service timeframe elapses.

## II.    INTRADISTRICT ASSIGNMENT

8.    This action arose in Yakima County, Washington. Therefore, Ms. McMinimee respectfully requests that the case be assigned to the Yakima Division of the Eastern District of Washington.

## III.    FACTS

9.    Plaintiff re-alleges the above paragraphs.

10.    On or about March 13, 2017 the YSD hired Ms. McMinimee as its Associate Superintendent for Human Resources.

11.    Between March 13, 2017 and November 6, 2017, Ms. McMinimee opposed illegal activities that Mr. Irion either directed or sanctioned.

12.    The illegal activities that Ms. McMinimee opposed included, without limitation, (a) Defendants' unequal treatment of male and female employees, (b) Defendants' failure to address gender discrimination against Ms. McMinimee and other female employees of YSD, (c) Defendants' discrimination against employees based on their failure to conform to certain gender stereotypes, (d) Defendants' violation of RCW 41.56.140's prohibition on direct dealing, (e) Defendants' desire

FIRST AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL- 3

to issue teaching contracts to those who did not hold effective teaching certificates in violation of RCW 28A.405.210, (f) Defendants' failure to comply with federal laws regarding the Defendants' treatment of disabled employees, (g) Defendants' failures to comply with federal laws regarding the Defendants' treatment of disabled students, and (h) Defendants' failures to comply with Title IX with respect to responding to student allegations of sexual harassment and sexual violence.

13.    As it relates to points (a) and (b), above, Ms. McMinimee's complaint included her good faith opposition to Mr. Irion's pay policy commonly referred to as the "Jack Factors."

14.    Briefly stated, the Jack Factors were the means by which Mr. Irion determined the salary schedule placement (and, in turn, pay) of managerial level District employees, including the below-described "Superintendent's Group" and the District's administrators.  The Jack Factors included placing internal hires one step higher on the salary schedule than they would otherwise be placed based on experience and moving individuals up on the salary schedule to ensure that they were being paid more than any subordinate that they would have.

15.    During the August 2017 timeframe, Ms. McMinimee expressed concern to Mr. Irion that the above referenced Jack Factors discriminatorily affected female administrators (as well as non-white administrators). This conversation took place in Mr. Irion's office and after Ms. McMinimee had expressed her concerns

FIRST AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL- 4

about the Jack Factors to others. Mr. Irion dismissed Ms. McMinimee's concerns identifying that the internal employee whose salary schedule placement was at issue at the moment was a female and would be making more than her subordinate.

16. Following the above-referenced conversation Ms. McMinimee made modifications to the Jack Factors to try to ameliorate the negative impacts of the Jack Factors to female administrators.

17. On or about October 30, 2017, Mr. Irion held a meeting with Ms. McMinimee that he identified to her was investigatory in nature.

18. On November 6, 2017, Defendants placed Ms. McMinimee on paid administrative leave.

19. Defendants' involuntary placement of Ms. McMinimee on administrative leave (and subsequent attempts to fire her) was in retaliation for Ms. McMinimee's good faith reasonable belief that she was opposing the above-referenced illegal activity.

20. Defendants' involuntary placement of Ms. McMinimee on paid administrative leave caused Ms. McMinimee to experience serious health problems which, in turn, caused her to use her rights under the Family Medical Leave Act ("FMLA").

21. On March 15, 2018, Ms. McMinimee's then-attorney (Sarah Evans) informed YSD's attorney (Michael Rorick) that Ms. McMinimee needed medical

FIRST AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL- 5

workplace leave and, as part of that notification, transmitted (to Mr. Rorick) a physician's note dated March 14, 2018.

22.    As of March 15, 2018, Defendants knew or had reason to know that Ms. McMinimee's medical leave might be for FMLA reasons. 29 C.F.R. § 825.300(b)(1).

23.    Federal regulations required that Defendants inform Ms. McMinimee as to whether she was eligible for FMLA within five business days of March 15, 2018, which, in this instance, was March 22, 2018. *Id.* Federal regulations refer to such a notification as a "FMLA Eligibility Notice." *See id.*

24.    Defendants did not give Ms. McMinimee an FMLA Eligibility Notice within five business days of March 15, 2018. This was the first time the District violated the FMLA.

25.    On March 26, 2018, Ms. McMinimee: (a) sent an email to the YSD employees who handle leave and FMLA issues, Monette Dennis and Gina Tookes, (b) informed Ms. Tookes and Ms. Davis that she intended to take leave under the FMLA, (c) informed Ms. Tookes and Ms. Davis that she was eligible for leave under the FMLA, and (d) informed Ms. Tookes and Ms. Davis of the serious health condition giving rise to her FMLA request.

26.    Ms. McMinimee's March 26, 2018, email further stated:

FIRST AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL- 6

I am asking that you please confirm what work calendar date (using the work calendar applicable to the Management Team/Superintendent's Group) you project will be my last day of having accrued leave available and then what work calendar date you project that I will exhaust FMLA.

27.    Federal regulations required that YSD give Ms. McMinimee an FMLA Eligibility Notice within five business days of March 26, 2018, which, in this instance, was April 2, 2018. 29 C.F.R. §825.300(b)(1).

28.    Defendants did not give Ms. McMinimee an FMLA Eligibility Notice by April 2, 2018, i.e. within five business days of March 26, 2018. This was the second time the District violated the FMLA.

29.    On April 3, 2018, YSD employee Kelli York (Ms. McMinimee's direct subordinate and not an individual who typically handles FMLA issues) informed Ms. McMinimee that (a) McMinimee was eligible for FMLA (b) Ms. McMinimee had been designated a "key employee" under the FMLA, and (c) that Ms. McMinimee had "seven days" to complete and return, to YSD, the District's FMLA medical certification form. Ms. York's April 3, 2018, email contained a nine page .pdf attachment labeled "MCMINIMEE 180403.pdf" that included a boilerplate single page document titled "FAMILY AND MEDICAL LEAVE", a single page document titled "APPLICATION FOR FMLA LEAVE", a four page "Certification of Health Care Provider for Employee's Serious Health Condition," and a three page "Assistant Superintendent for Human Resources" job description.

FIRST AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL- 7

30.    The District's April 3, 2018, email to Ms. McMinimee violated the FMLA because 29 C.F.R. § 825.305(b) gives Ms. McMinimee at least 15 calendar days (as opposed to "<u>seven days</u>") to complete and return the FMLA serious health condition certification form.   <u>This was the third time the District violated the FMLA</u>.

31.    Federal regulation also required that the Defendants provide Ms. McMinimee a written FMLA "Rights and Responsibilities" notice at the same time it gave Ms. McMinimee her FMLA Eligibility Notice. 29 C.F.R. § 825.300(c)(1).

32.    The FMLA Rights and Responsibilities Notice must, *inter alia,* (a) inform the employee whether "the leave may be designated and counted against the employee's annual FMLA leave entitlement if qualifying" (b) inform the employee of "[t]he employee's right to substitute paid leave, whether the employer will require the substitution of paid leave, the conditions related to any substitution, and the employee's entitlement to take unpaid FMLA leave if the employee does not meet the conditions for paid leave," and (c) inform the employee as to "arrangements for making [premium payments to maintain health benefits]." 29 C.F.R. § 825.300(c)(i)(iii)&(iv).

33.    The Defendants' April 3, 2018, email and attachment violated the FMLA by failing to inform Ms. McMinimee of the above-referenced FMLA rights. <u>This was the fourth, fifth, and sixth time the Defendants violated the FMLA.</u>

FIRST AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL- 8

34.     On April 4, 2018, Ms. McMinimee informed YSD that it had violated the FMLA for the above-referenced reasons and that those FMLA violations created illegal barriers that prevented Ms. McMinimee from exercising her FMLA rights.

35.     Ms. McMinimee's April 4, 2018 email also informed YSD that its withholding of certain contractually allowed wages violated Washington's WPA. *See infra.*

36.     On April 16, 2018, the YSD received Ms. McMinimee's completed "Certification of Health Care Provider for Employee's Serious Health Condition" form.

37.     On April 17, 2018, the YSD received Ms. McMinimee's semi-completed "APPLICATION FOR FMLA LEAVE" form. The form was "semi-completed" because YSD had not informed Ms. McMinimee if she would be required or allowed to access her accrued leave, what forms of her accrued leave would be available for her to use, and when that leave would be exhausted, which in turn, rendered her unable to ascertain the begin and end dates of her FMLA leave.

38.     On April 17, 2018, Ms. McMinimee further informed YSD that:

I am unable to calculate when I will exhaust my accrued leave and thus begin accessing FMLA leave consistent with the District's requirement. I have asked multiple time that the District to please confirm what work calendar date (using the work calendar applicable to the Management Team/Superintendent's Group) will be my last day of having accrued leave available if March 26, 2018 is recorded as my first use of leave and then what work calendar date the District projects that I will

FIRST AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL- 9

exhaust FMLA if I am required to take the full twelve weeks of FMLA leave available to me, but those requests have gone unanswered. That is perplexing, as I have watched this same information be provided to other employees and do not understand why I am being treated differently than other employees.

39.     Federal regulations required that YSD give Ms. McMinimee an FMLA Designation Notice within five business days of April 16, 2018, which, in this instance, was April 23, 2018. 29 C.F.R. §825.300(d)(1).

40.     Federal regulations further required that the FMLA Designation Notice "notify the employee of the amount of leave counted against the employee's FMLA leave entitlement [and] [i]f the amount of leave needed is known at the time the employer designates the leave as FMLA-qualifying, the employer must notify the employee of the number of hours, days, or weeks that will be counted against the employee's FMLA leave entitlement in the designation notice." 29 C.F.R. § 825.300(d)(6).

41.     On April 17, 2018, YSD informed Ms. McMinimee of her sick leave, vacation, and personal leave balances that existed as of March 27, 2018, but YSD did not, as required by the FMLA, tell Ms. McMinimee as to whether the sick leave, vacation leave, and personal leave balances would be counted against Ms. McMinimee's 12-week FMLA entitlement. This is the District's seventh violation of the FMLA.

FIRST AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL- 10

42.    As of the date of this complaint the District has yet to tell Ms. McMinimee as to when her FMLA will begin and when it will end. This, in turn, has caused (and continues to cause) Ms. McMinimee uncertainty as to when the leave will begin and end which, in turn, has caused Ms. McMinimee damages in an amount to be proven at trial.

## IV.  CAUSES OF ACTION

### (CAUSE OF ACTION NO. 1 & 2 – VIOLATION OF 29 U.S.C. § 2615(A)(1)-(2) – FAMILY MEDICAL LEAVE ACT – INTERFERENCE & DISCRIMINATION)

43.    Plaintiff re-alleges the above paragraphs.

44.    In order to prosecute a <u>FMLA interference claim</u> the employee must show that she (1) was eligible for the FMLA's protections, (2) the employer was covered by the FMLA, (3) the employee was entitled to leave under the FMLA, (4) the employee provided sufficient notice of her intent to take leave, and (5) the employer denied her FMLA benefits to which she was entitled.

45.    Ms. McMinimee worked for YSD for over 1,250 hours before the start of her FMLA leave.

46.    The YSD employed Ms. McMinimee 12 months before the beginning of her FMLA leave.

47.    Ms. McMinimee was entitled to leave under the FMLA given her serious health condition as shown by, *inter alia,* the "Certification of Health Care

FIRST AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL- 11

Provider for Employee's Serious Health Condition" (and accompanying physician letter) that Ms. McMinimee gave Defendants on or about April 17, 2018.

48.     Ms. McMinimee provided the YSD notice of her intent to take FMLA leave on March 15, 2018 and March 26, 2018.

49.     Defendants interfered with Ms. McMinimee's FMLA rights by violating the FMLA on at least seven separate occasions as set forth above. Defendants have further interfered with Ms. McMinimee's FMLA rights by failing to inform her as to when her FMLA leave will begin and when it will end.

50.     Defendants' failure to follow the FMLA has required Ms. McMinimee to resort to filing this lawsuit so as to have the Court exercise its equitable powers, as allowed under 29 C.F.R. § 325.300(e), to compel Defendants to inform Ms. McMinimee as to when her FMLA leave will begin and end.

51.     Defendants' failure to follow the FMLA's notice provisions has caused her uncertainty as to whether or not she is on FMLA which, in turn, has cost Ms. McMinimee between $600 - $700/day in use of her own accrued leave.

52.     Defendants have further interfered with Ms. McMinimee's FMLA rights by, without any basis, designating Ms. McMinimee as a "key employee" even though YSD has no basis to conclude that, as of March 2018, the YSD would suffer "substantial and grievous economic injury" if required to restore Ms. McMinimee

FIRST AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL- 12

to her job upon the conclusion of her FMLA leave. As such, Ms. McMinimee seeks a declaration that she is not a "key employee" for the purposes of the FMLA.

53.    Ms. McMinimee also seeks a declaration from the Court that YSD violated the FMLA for the seven reasons listed in the statement of facts section of this complaint.

54.    Ms. McMinimee further seeks a declaration that she be allowed to access and utilize her own leave to the same extent the YSD allows its other employees to do the same under the FMLA.

55.    In order to prosecute a <u>FMLA discrimination claim</u> the employee must show (1) she availed herself of a protected right under the FMLA; (2) she suffered an adverse employment decision; and (3) there is a causal connection between the two actions.

56.    Regarding point (1), Ms. McMinimee availed herself to her right to request FMLA leave on March 15, 2018 and March 26, 2018.

57.    Regarding point (2), Defendants subjected Ms. McMinimee to the following adverse employment decisions (a) by (on April 12, 2018) threatening Ms. McMinimee with a *Loudermill* termination hearing (which was scheduled for April 17, 2018) even though (as of April 3, 2018) the Defendants acknowledged that Ms. McMinimee was FMLA eligible and (b) by (on March 28, 2018) depriving Ms. McMinimee of the below-referenced contractually mandated pay increases (more

FIRST AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL- 13

on that below) while allowing Ms. McMinimee's similarly-situated co-workers to receive those benefits on March 30, 2018.

58.     Defendants' acts have caused Plaintiff damages in an amount to be proven at trial.

**(CAUSE OF ACTION NO. 3 – VIOLATION OF WASHINGTON'S WAGE REBATE ACT –RCW 49.52.050)**

59.     An employee prosecuting a RCW 49.52.050(2) Wage Rebate Act (WRA) claim must show that (a) the employer (or employer's agent) (b) willfully and intentionally deprived the employee of (c) "any part of his or her wages" and/or paid the "employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract."

60.     On March 13, 2017, Ms. McMinimee and Mr. Irion (on behalf of the YSD) entered into a Letter of Intent for her hiring as the Associate Superintendent for Human Resources.

61.     Several days after Ms. McMinimee's hiring, Mr. Irion contacted Ms. McMinimee by telephone and told her that he did not want to upset Associate Superintendent Scott Izutsu for "political reasons" and it would be better if Ms. McMinimee were called "Assistant Superintendent for Human Resources."

62.     Ms. McMinimee believed that this "Associate-to-Assistant" job title change was a change that was being made only for appearance sake and would have

FIRST AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL- 14

no other impact on her compensation. Indeed, Ms. McMinimee was never asked to sign a revised Letter of Intent reflecting that this would be a contractual change, nor was she ever issued a contract that identified her as an Assistant Superintendent.

63.    Ms. McMinimee was a member of the YSD "Superintendent Group" meaning, for the purpose of this claim, that she was entitled to retroactive pay increases for the portion of the 2016-2017 work year that she was employed by the YSD and all of the 2017-2018 work year to date.

64.    The "Superintendent Group" includes, Ms. McMinimee, Deputy Superintendent Cecelia Mahre, Associate Superintendent Scott Izutsu, and Assistant Superintendent Alicia Jacob.

65.    Mr. Irion advised Ms. McMinimee at her hiring that he was planning to seek a retroactive pay raise for the Superintendent's Group for the 2016-2017 school year, as well as a pay raise for the Superintendent's Group for the 2017-2018 school year.

66.    On June 30, 2017, Mr. Irion made a request that the School Board approve the retroactive pay raise for the Superintendent's Group for the 2016-2017 school year, as well as a pay raise for the Superintendent's Group for the 2017-2018 school year.

67.    During the months of July, August, and September 2017, Mr. Irion advised Ms. McMinimee individually and the Superintendent's Group collectively

that the retroactive pay raise for the Superintendent's Group for the 2016-2017 school year, as well as a pay raise for the Superintendent's Group for the 2017-2018 school year, would be forthcoming but would be delayed until later in the school year because of certain appearance concerns voiced by the School Board. Mr. Irion also shared that the members of the Superintendents Group would get their individual employment contracts for the year when the raises were approved.

68.    On March 28, 2018, YSD employee Jennifer Baird (Mr. Irion's Executive Assistant) informed the YSD's agent, Michael Rorick:

**From:** Baird, Jennifer
**Sent:** Wednesday, March 28, 2018 11:04 AM
**To:** Michael Rorick'
**Subject:** S.M. pay info

Mike,

Please find attached pay information for Shannon McMinimee. The other superintendents will have their raises and retro pay on the March 30 check. Shannon's is being held. Thank you.

*Jennifer L. Baird*
**Administrative Assistant to the Superintendent**
**Central Services Building Principal**
**Yakima School District – Central Services**
**104 N. Fourth Avenue**
**Yakima, WA 98902**
--------------------------------
**Phone 509.573.7001**
**Fax 509.573.7181**

69.    The "Shannon" referenced in the March 28, 2018, email refers to Shannon McMinimee.

70.    On April 4, 2018, Ms. McMinimee informed YSD employees Kelli York and Monette Dennis:

To the extent the District withholds (or has already withheld) payment of the retroactive pay increases to me, the District is wrongfully withholding wages in violation of Washington law,  incurring civil

FIRST AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL- 16

liability for my attorney's fees and costs, as well as double damages. The District is also risking individual criminal and civil liability for Dr. Irion, the members of the School Board, and any other employee who has participated in a decision to intentionally withhold wages from [me]. *See* RCW 49.52.050 and RCW 49.52.070. Please consider the District on notice with respect to this issue should the retroactive pay increases be unlawfully withheld from me.

71.    No employee or agent of the Defendants substantively responded to the above-referenced allegation in Ms. McMinimee's April 4, 2018, email.

72.    Although on notice that its failure to pay Ms. McMinimee her contractually allowed pay increase, YSD did not provide Ms. McMinimee her pay increase yet paid the other members of the Superintendent's Group their retroactive pay increases.

73.    The Defendants' acts and omissions have caused Plaintiff to be damaged in an amount to be proven at trial.

74.    Given Defendants' willful and intentional withholding of Ms. McMinimee's wages Ms. McMinimee is entitled to double damages, attorneys' fees, and prejudgment interest.

**(CAUSE OF ACTION NO. 4 – EQUAL PAY ACT - RETALIATION)**

75.    In order to state a claim for retaliation under the Equal Pay Act a plaintiff must establish (1) engagement in protected activity, (2) a materially adverse action which would dissuade a reasonable worker from making or supporting a charge of discrimination, and (3) causality.

FIRST AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL- 17

76.    Ms. McMinimee engaged in protected activity in August and September of 2017 by opposing the Jack Factors and then by making modifications to the Jack Factors.

77.    Defendants subjected Ms. McMinimee to an adverse employment action by, *inter alia,* placing her on administrative leave so as to buy time in which Defendants could come up with a reason to fire Ms. McMinimee. By placing Ms. McMinimee on administrative leave (and barring her from her District office as well her ability to access any electronic files and her saved emails), the District barred her from having access to documents and records that she would need to defend herself against Defendants' pretextual allegations.

78.    The proximity in time between Ms. McMinimee's oppositional activity and the adverse action, coupled with Mr. Irion's treatment of Ms. McMinimee during the August 2017 meeting and October 30, 2017, interaction is sufficient to establish causation.

79.    Defendants' actions have damaged Ms. McMinimee in an amount to be proven at trial.

**(CAUSE OF ACTION NO. 5 – VIOLATION OF EQUAL PAY ACT)**

80.    To prevail on an Equal Pay Act claim a plaintiff must show that her employer has paid male and female employees different wages for substantially equal work.

FIRST AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL- 18

81.    Defendants paid Ms. McMinimee a pro-rated salary based on the 2016-2017 school year annual salary of $127,658.00 as an Assistant Superintendent, Step 6.

82.    Defendants paid Mr. Izutsu $130,286 for the 2016-2017 school year as an Associate Superintendent, Step 6. Mr. Izutsu has received a retroactive pay increase for the 2016-2017 school year, whereas that has been withheld from Ms. McMinimee.

83.    The above-referenced pay disparities also applied (and apply) to the 2017-2018 school year. Additionally, and as set forth above, Mr. Izutsu has received a pay increase for the 2017-2018 school year, whereas the same has been withheld from Ms. McMinimee.

84.    Ms. McMinimee and Mr. Izutsu conducted substantially equal work as both individuals (a) reported to the District's Superintendent, (b) worked as part of the Superintendent Group throughout the calendar year, (c) were subject to the terms and condition of the District's Management Team Handbook, (d) were subject to the same provisions regarding benefits as set out in the applicable Collective Bargaining Agreement, (e) maintained offices at the District's Central Services building, (f) led various bargaining teams, (g) ostensibly worked similar hours, (h) played key roles in the District's budgeting and staffing, (i) were authorized to sign warrants and contracts the District's behalf, and (j) were required

to attend the same Board Meetings, Management Team Meetings, and Cabinet Meetings.

85.     The District did not utilize (i) a seniority system; (ii) a merit system; or (iii) a system which measured earnings by quantity or quality of production in establishing the pay rates of Ms. McMinimee and Mr. Izutsu.

86.     Nor did the District utilize a differential based on any other factor other than sex as Ms. McMinimee and Mr. Izutsu have similar licensing (both are licensed attorneys), education, and administrative experience.

87.     In fact, although Ms McMinimee is not required to prove discriminatory intent to prevail on her EPA claim, evidence of Defendants' deceptive (and discriminatory) intent exists given the statement that Mr. Irion made to Ms. McMinimee shortly after her March 13, 2017, hire date when Mr. Irion told Ms. McMinimee that he would be changing her job title from Associate Superintendent to Assistant Superintendent for "political reasons" associated with not offending Mr. Izutsu. Yet in making that statement, Mr. Irion hid from Ms. McMinimee the fact that he was relegating her to a lower pay scale.

88.     Defendants' actions toward Ms. McMinimee were knowing and willful and caused Ms. McMinimee damages in an amount to be proven at trial.

## V.     PRAYER FOR RELIEF

Plaintiff respectfully prays for:

FIRST AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL- 20

A.      Compensation for all injury and damages suffered by Ms. McMinimee including, but not limited to, both economic and non-economic damages, in the amount to be proven at trial including back pay, front pay, pre and post judgment interest, lost benefits of employment, adverse tax consequences of any award for economic damages, liquidated damages, and general damages relating to emotional distress and mental anguish damages as provided by law.

B.      Plaintiff's reasonable attorneys, expert fees, and costs, pursuant to 29 U.S.C. § 2617(a)(3), RCW 49.52.070, 29 U.S.C. § 216(b), and as otherwise provided by law as well as the *private attorney general* theory of recovery of reasonable attorney fees and costs in employment related cases.

C.      For the Court to use its equitable powers to declare that Defendants' actions have violated the FMLA and WRA and, to the extent necessary, order the Defendants to comply with the FMLA.

D.      For such other and further relief as this Court deems just and equitable.

Respectfully submitted this 7th day of June 2018.

*/s Matthew Crotty*
MATTHEW Z. CROTTY, WSBA 39284
Crotty & Son Law Firm, PLLC
905 West Riverside, Suite 404
Spokane, WA 99201
Telephone: 509.850.7011

Attorney for Plaintiff

FIRST AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL- 21

## CERTIFICATE OF SERVICE

I certify that I filed the above-captioned document with the Court via the Court's CM/ECF system which will cause the attorneys who have appeared in this action to be served with this document.

Dated this 7th day of June 2018.

> */s/ Matthew Crotty*
> MATTHEW Z. CROTTY
> Crotty & Son Law Firm, PLLC
> 905 West Riverside, Suite 404
> Spokane, WA 99201
> Telephone: 509.850.7011

FIRST AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL- 22