**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| SHANNON MCMINIMEE, | **NO. 1:18-CV-3073-TOR** |
| Plaintiff, | MOTION TO DISMISS RESPONSE BRIEF |
| v. | |
| YAKIMA SCHOOL DISTRICT NO. 7, et. al. | Without oral argument |
| Defendants. | |

## I. INTRODUCTION & SUMMARY OF ARGUMENT

Defendant Jack Irion's desire to avoid personal responsibility for the role he played in denying Ms. McMinimee rights under the FMLA, EPA, WPA, WLAD, U.S. Constitution, and Washington's common law protecting workers from an employer's retaliatory discharge should be denied. Ms. McMinimee's complaint sufficiently puts Mr. Irion on notice that his acts or omissions subject him to

MOTION TO DISMISS RESPONSE BRIEF
- 1

personal liability under the law. Ms. McMinimee clarifies that her defamation, outrage, breach of contract, and public record act claims are against Defendant Yakima School District (YSD) and not against Mr. Irion.

## II. ARGUMENT

### A. Ms. McMinimee's complaint satisfies Rule 12's standards.

The Ninth Circuit, post-*Iqbal,* still holds "[t]he text of Rule 8(a) as not been changed since the initial promulgation of the Federal Rules of Civil Procedure in 1938. In relevant part, it provides: (a) Claim for Relief. A pleading that states a claim for relief must contain (2) a short and plain statement of the claim showing that the pleader is entitled to relief." *Starr v. Baca*, 652 F.3d 1202, 1212 (9th Cir. 2011) (*citing Iqbal*). Other courts are in accord holding that *Twombly* and *Iqbal* did not "re-write Rule 12(b) (6) or abandon notice pleading" but note that:

> Since *Twombly* was decided, many lawyers have felt compelled to file a motion to dismiss in nearly every case, hoping to convince the Court that it now has the authority to divine what the plaintiff may plausibly be able to prove rather than accepting at the motion to dismiss stage that the plaintiff will be able to prove his allegations. These motions, which bear a close resemblance to summary judgment motions, view every factual allegation as a mere legal conclusion and disparagingly label all attempts to set out the elements of a cause of action as 'bare recitals.' They almost always, either expressly or, more often, implicitly, attempt to burden the plaintiff with establishing a reasonable likelihood of success on the merits under the guise of the 'plausibly stating a claim' requirement. *Meyer v. Snyders Lance, Inc.*, 2012 WL 6913724, at *1 (M.D. Ga. Dec. 12, 2012).

MOTION TO DISMISS RESPONSE BRIEF
- 2

Indeed, "the Federal Rules do not contain a heightened pleading standard for employment discrimination suits" or require the plaintiff to show the claim will succeed on the merits. *Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 515 (2002). Accordingly, if a defendant alleges that a plaintiff's factual allegations are insufficient to state a claim, the court reviews the allegations under Fed.R.Civ.P. 8(a)'s liberal pleading standards, construes allegations in a light favorable to the non-moving party, accepts the pled facts as true, and draws reasonable inferences in favor of the non-moving party. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.,* 416 F.3d 940, 946 (9th Cir. 2005); *Wyler Summit P'ship v. Turner Broad. Sys. Inc.,* 135 F.3d 658, 661 (9th Cir. 1998). In the employment context, "[a]n employment discrimination plaintiff need not plead a *prima facie* case of discrimination" to avoid dismissal pursuant to Rule 12(b)(6). *Shapour v. California*, 2014 WL 3850012, at *6 (E.D. Cal. Aug. 5, 2014) (*citing Swierkiewicz,* 534 U.S. at 516). For the reasons stated below, Ms. McMinimee's complaint comports with Fed. R. Civ. P. 8(a).

**B.    Ms. McMinimee properly pleads FMLA claims.**

Mr. Irion argues that Ms. McMinimee's FMLA interference claim fails because Ms. McMinimee experienced no prejudice and did not identify a serious health condition. (ECF No. 20, PGID 252, 254) As to the "serious health condition" contention, Ms. McMinimee plausibly alleges (i) that Mr. Irion's placement of her

MOTION TO DISMISS RESPONSE BRIEF
- 3

on administrative leave caused her "serious health problems" (ii) those "serious health problems" then caused Ms. McMinimee to, on March 15, 2018, tell the YSD that "she needed medical workplace leave," and support that request with a physician's note dated March 14, 2018, (iii) those "serious health problems" then led to Ms. McMinimee's health deteriorating to such a degree to potentially require hospitalization; and, (iv) that Ms. McMinimee (through counsel) gave Defendants a note from her doctor supporting her FMLA request as well as the YSD-required "Certification of Health Care Provider for Employee's Serious Health Condition" form. (ECF No. 11, ¶53, 56, 57, 73, 77, 108) Ms. McMinimee alleges that on March 26, 2018 she "informed [two YSD HR employees] of the serious health condition giving rise to her FMLA request" (ECF No. 11, ¶61), that on April 3, 2018, Defendants deemed Ms. McMinimee FMLA eligible (and, in doing so requested that Ms. McMinimee complete and return a "Certification of Health Care Provider for Employee's Serious Health Condition" form) (ECF No. 11, ¶65), and that on or about April 16, 2018, YSD received Ms. McMinimee's completed "Certification of Health Care Provider for Employee's Serious Health Condition" form along with a physician's note. (ECF No. 11, ¶77, 108) Defendants admit to receiving the "Certification of Health Care Provider for Employee's Serious Health Condition" form. (ECF No. 13, ¶77) Since Ms. McMinimee's allegations must be considered true and since all reasonable inferences from those facts must be made in Ms.

MOTION TO DISMISS RESPONSE BRIEF
- 4

McMinimee's favor, a reasonable inference exists that the Serious Health Condition form that Defendants admit to receiving set out additional bases for the serious health condition element of Ms. McMinimee's FMLA claim. *See Ass'n for Los Angeles Deputy Sheriffs v. Cty. of Los Angeles*, 648 F.3d 986, 991 (9th Cir. 2011). Taken together, Ms. McMinimee's complaint puts Mr. Irion on notice that Ms. McMinimee's health care provider certified that Ms. McMinimee had a serious health condition and that Defendants were aware of that certification as part of the FMLA approval process. This is enough to satisfy Rule 8's notice pleading requirements as to the existence of a serious health condition.

Ms. McMinimee also plausibly alleges that Defendants harmed her by failing to tell her the date her FMLA would start and end, an act (by omission) that Ms. McMinimee alleges caused her between $600-700/day in damages (ECF No. 11, ¶79, 81, 83, 112) Ms. McMinimee plausibly pleads the prejudice necessary to prevail on her FMLA interference claim.

Mr. Irion then alleges that Ms. McMinimee's FMLA retaliation claim fails because the two-month lag time between Ms. McMinimee's protected activity of requesting FMLA and discharge is insufficient, standing alone, to establish causation. (ECF No. 20, PGID 256) Defendants are wrong on both the law and facts. Temporal proximity, standing alone, is enough to satisfy causation in an employment retaliation case. *See Hanson v. Cty. of Kitsap*, 21 F. Supp. 3d 1124,

MOTION TO DISMISS RESPONSE BRIEF
- 5

1132, 1145-46, 1151 (W.D. Wn. 2014)(timeframe between January 2, 2013 protected activity and April 25, 2013 adverse employment action was, standing alone, sufficient to allow state and federal employment discrimination claims to survive summary judgment). The temporal proximity regarding Ms. McMinimee's claims involves FMLA protected activity on March 15, 2018, and March 26, 2018, and adverse employment actions on March 28, 2018, and April 12, 2018. (ECF No. 11, ¶117-118) The temporal proximity alleged is of the "very close" sort that, standing alone, sufficiently shows causation. *Thomas v. City of Beaverton*, 379 F.3d 802, 812 (9th Cir. 2004)("The causal link between a protected activity and the alleged retaliatory action 'can be inferred from timing alone" when there is a close proximity between the two.'")(*citing Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1065 (9th Cir.2002)).

Additionally, Ms. McMinimee pleads other instances of circumstantial evidence that appropriately establish causation, including, different treatment of similarly situated workers (ECF No. 11, ¶79) and the Defendants' seven violations of the FMLA. (ECF No. 11, ¶ 60, 64, 66, 69, 82) *See United States v. Shetty*, 76 F. App'x 842, 845 (9th Cir. 2003)("[T]he government properly presented… regulatory violations as circumstantial evidence of intent to defraud."); *Marquez v. Glendale Union High Sch. Dist.*, No. 2018 WL 4899603, at *5 (D. Ariz. Oct. 9, 2018)(recognizing comparator evidence as circumstantial evidence in employment

MOTION TO DISMISS RESPONSE BRIEF
- 6

discrimination case). These allegations, taken together, plausibly state a FMLA retaliation claim.

### C.  Ms. McMinimee properly pleads her WRA claim.

Mr. Irion argues that Ms. McMinimee pleads no facts establishing that he (Irion) controls the pay at issue in the WRA claim. (ECF No. 20, PGID 257)  Mr. Irion's argument fails because Ms. McMinimee pleads that Mr. Irion (i) signed Ms. McMinimee's employment contract, (ii) changed Ms. McMinimee's employment contract, (iii) told Ms. McMinimee that he would ask the YSD school board to increase Ms. McMinimee's pay under that contract, (iv) and then requested the pay increase. (ECF No. 11, ¶121, 122, 126, 127) Those allegations sufficiently establish Mr. Irion's personal liability as to the WRA claim. *See Jumamil v. Lakeside Casino, LLC,* 179 Wash. App. 665, 684–85 (2014)(individual liability under WRA claim if defendant controls the choices over how a company's money is used).   Indeed, if Mr. Irion can control Ms. McMinimee's pay by signing her employment contract, changing that contract, and requesting that payment under the contract be increased a reasonable inference follows that Mr. Irion can also withhold Ms. McMinimee's pay increase: an act which is precisely what Ms. McMinimee claims and which establishes a WRA claim. (ECF No. 11, ¶129-131)

### D.  Ms. McMinimee properly pleads EPA claims.

Mr. Irion claims that Ms. McMinimee's EPA retaliation claim fails because

MOTION TO DISMISS RESPONSE BRIEF
- 7

Ms. McMinimee did not properly oppose Mr. Irion's EPA violation. (ECF No. 20, PGID 258) Mr. Irion's first name is Jack. Mr. Irion devised an employee compensation scheme called the "Jack Factors." (ECF No. 11, ¶15) Ms. McMinimee, in August 2017, "expressed concern to Mr. Irion that the above-referenced 'Jack Factors' discriminatorily affected female administrators." (ECF No. 11, ¶16)  What Ms. McMinimee alleges is no different than a female factory worker telling her male supervisor "hey boss, your pay policy discriminates against women and is wrong." EEOC guidance shows that such statements are oppositional activity.[1] Mr. Irion cites no case which holds, as a matter of law, that Ms. McMinimee's statement is legally insufficient to establish oppositional activity.

Mr. Irion then alleges that Ms. McMinimee's contention that she gets paid less than her male comparator, Scott Izutsu, is, standing alone, insufficient to establish an EPA claim. (ECF No. 20, PGID 260) But Ms. McMinimee's EPA claim contains much more. As a starting point, Ms. McMinimee pleads that Mr. Irion plays a significant part in determining upper management level employee compensation for the purpose of her WRA claim. *See supra.* Ms. McMinimee

---

[1] *See EEOC Enforcement Guidance on Retaliation and Related Issues* §II A.2.e. *available at* https://www.eeoc.gov/laws/guidance/retaliation-guidance.cfm#e._Examples (*last visited* June 27, 2019).

MOTION TO DISMISS RESPONSE BRIEF
- 8

pleads that Mr. Irion made the decision to change Ms. McMinimee's job title "for political reasons" so as to not offend Mr. Izutsu but that Mr. Irion hid, from Ms. McMinimee, that Mr. Irion was relegating her to a lower pay scale. (ECF No. 11, ¶150) Ms. McMinimee alleges nine examples of her doing substantially equal work to Mr. Izutsu. (ECF No. 11, ¶147(a)-(j)) Collectively, Ms. McMinimee pleads an EPA violation by Mr. Irion in alleging that Mr. Irion paid her less than her male comparator, Izutsu, even though Ms. McMinimee and Mr. Izutsu did substantially equal work. *See E.E.O.C. v. Maricopa Cty. Cmty. Coll. Dist.*, 736 F.2d 510, 514 (9th Cir. 1984)(plaintiff established prima facie case when she showed she worked the same job as her male comparators but was paid less).

### E.    Ms. McMinimee properly pleads a WLAD retaliation claim.

Mr. Irion argues that Ms. McMinimee did not plead that her opposition to Mr. Irion's discriminatory acts where enough "to show that Dr. Irion knew or should have known that her complaints were directed at conduct prohibited by WLAD." (ECF No. 20, PGID 263) The opposition clause of the Title VII (the federal statute analogous to the WLAD)[2] "protects only those employees who oppose what they

---

[2] "Although it is not binding, Washington courts look to Title VII case law for instruction or persuasive authority in construing WLAD." *Ellorin v. Applied Finishing, Inc.*, 996 F. Supp. 2d 1070, 1081 (W.D. Wn. 2014).

MOTION TO DISMISS RESPONSE BRIEF
- 9

reasonably perceive as discrimination under the Act." *Learned v. City of Bellevue*, 860 F.2d 928, 932 (9th Cir. 1988). Title VII's opposition clause has a broad definition: "[w]hen an employee communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination, that communication virtually always constitutes the employee's opposition to the activity." *Crawford v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*, 555 U.S. 271, 276 (2009)(*citing* EEOC Compliance Manual). Opposition includes instances when the employee takes "a stand against an employer's discriminatory practices not by 'instigating' action, but by standing pat…by refusing to follow a supervisor's order to fire a junior worker for discriminatory reasons." *Id.* at 277. Advising an employer on compliance with anti-discrimination laws, assisting an employer in an internal discrimination investigation, and complaining (or threatening to complain) about alleged discrimination against oneself or others are other examples of protected oppositional activity.[3] The WLAD prohibits discrimination based on, *inter alia,* gender, sexual orientation, age, and race. RCW 49.60.030(1). With these rules in mind, Ms. McMinimee pleads numerous examples of her exercising her

---

[3] *See EEOC Enforcement Guidance on Retaliation and Related Issues* §II A.2.e. *available at* https://www.eeoc.gov/laws/guidance/retaliation-guidance.cfm#e._Examples (*last visited* June 27, 2019).

MOTION TO DISMISS RESPONSE BRIEF - 10

right to oppose, to Mr. Irion, instances of discrimination occurring at the YSD.

Ms. McMinimee alleges that she told Mr. Irion that his "Jack Factors" discriminated against females "as well as non-white administrators." (ECF No. 11, ¶16) This is opposition to race (and gender) discrimination. Ms. McMinimee pleads that female employees told her of systemic gender discrimination at the Yakima School District, Mr. Irion's awareness of that discrimination, and Mr. Irion's failure to act on that discrimination after Ms. McMinimee raised those issues with Mr. Irion. (ECF No. 11, ¶18-19) This is complaining about alleged discrimination. Ms. McMinimee pleads that she "repeatedly" advised against Mr. Irion's order to discipline a female employee because it "would likely subject [YSD] to quid pro quo sexual harassment" liability and then opposed Mr. Irion's discrimination by refusing to carry out Mr. Irion's disciplinary directive. (ECF No. 11, ¶22-23) Refusing to follow a discriminatory instruction is a recognized form of opposition in the employment retaliation context as is advising an employer on complying with anti-discrimination laws. Ms. McMinimee pleads that she opposed Mr. Irion's gender discrimination by telling him that Mr. Irion's criticism of a female Native American teacher's dress "needed to stop." (ECF No. 11, ¶29) Ms. McMinimee pleads that she opposed, to Mr. Irion, Mr. Irion's demotion of an elderly black employee. (ECF No. 11, ¶30-32) Ms. McMinimee's complaint makes clear that she repeatedly opposed Mr. Irion's discriminatory acts and that Mr. Irion was on

MOTION TO DISMISS RESPONSE BRIEF
- 11

notice that he was breaking the law.

### F. Ms. McMinimee properly pleads 1ˢᵀ and 14ᵀᴴ Amendment claims to which Mr. Irion has no qualified immunity defense.

Mr. Irion argues that Ms. McMinimee's First Amendment retaliation case fails because Ms. McMinimee spoke as a public employee. (ECF No. 20, PGID 265) Mr. Irion further argues that Ms. McMinimee's "alleged protected speech was about things within her job responsibilities." *Id.* But Ms. McMinimee alleges that Cece Maher was YSD's Title IX officer and, "per Mr. Irion…it was not within Ms. McMinimee's job duties whatsoever to express any opinion on Title IX matters," regarding sexual assault and sexual harassment. (ECF No. 11, ¶39, 159, 160, 161) Accordingly, since "the determination whether the speech in question was spoken as a public employee or a private citizen presents a mixed question of fact and law," and since Ms. McMinimee alleges that she spoke as a private citizen given the allegation that Mr. Irion told her that it was not her job to discuss Title IX matters, the issue of whether Ms. McMinimee was speaking pursuant to her job duties cannot be resolved at this stage. *Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1129 (9th Cir. 2008) (*citing Garcetti*). Unquestionably, speech regarding the means by which a school should improve how it protects students from sexual assault, YSD's non-compliance with Title IX, and YSD's non-compliance with disability laws are matters of public concern. (ECF No. 11, ¶34, 160, 161) For

"[s]peech involves matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Jordahl v. Brnovich*, 336 F. Supp. 3d 1016, 1047 (D. Ariz. 2018). Accordingly, Ms. McMinimee properly pleads speech of a public concern, that (per Mr. Irion) was not within her job duties, and alleges that her employment was terminated on account of, *inter alia,* that speech. (ECF No. 11, ¶47) Mr. Irion then claims that Ms. McMinimee must show that her speech was the "but for" cause of her dismissal. (ECF No. 20, PGID 265) However, the Ninth Circuit utilizes the substantial/motivating factor in First Amendment employment retaliation claims. *Coszalter v. City of Salem*, 320 F.3d 968, 977 (9th Cir. 2003). Mr. Irion then claims that Ms. McMinimee's First Amendment claim fails to plead enough facts to establish causation. (ECF No. 20, PGID 266) A First Amendment "plaintiff can show that retaliation was a substantial or motivating factor behind a defendant's adverse employment actions [by] introduc[ing] evidence regarding the 'proximity in time between the protected action and the allegedly retaliatory employment decision,' [or] evidence that 'his employer expressed opposition to his speech, either to him or to others' [or] evidence that 'his employer's proffered explanations for the adverse employment action were false and pre-textual.'" *Coszalter*, 320 F.3d at 977. Here Ms. McMinimee establishes proximity in time.

MOTION TO DISMISS RESPONSE BRIEF
- 13

*See supra.* Ms. McMinimee also pleads that Mr. Irion expressed opposition to Ms. McMinimee's speech regarding Title IX violations by telling her to "stay in her lane." (ECF No. 11, ¶39) Ms. McMinimee pleads that Mr. Irion's decision to place her on leave (and ultimately fire her) was a pretext. (ECF No. 11, ¶45, 46, 54, 55, 74, 75) And to the extent Mr. Irion suggests that Mr. Irion's non-renewal of Ms. McMinimee's year-to-year employment contract absolves him of retaliation liability he is likely mistaken because "[a]lthough the Ninth Circuit has not explicitly addressed this issue, it has suggested that non-renewal of a contract may constitute an adverse action to support a § 1983 claim for violation of free speech." *Ortiz v. Alvarez*, 341 F. Supp. 3d 1087, 1102–03 (E.D. Cal. 2018).

Regarding Ms. McMinimee's 14th Amendment Due Process claim, Mr. Irion claims that RCW 28A.405.210-220 and RCW 28A.405.300 confer no Constitutionally protected property interest on Ms. McMinimee because she is not a certificated employee. (ECF No. 20, PGID 267-268) Yet Ms. McMinimee alleges that she is a "certificated administrator" and that allegation must be taken as true at this stage. (ECF No. 11, ¶97, 174) Additionally, had RCW 28A.405.210/300's due process protections not applied to Ms. McMinimee (because she was allegedly not "certificated") then it is unlikely that YSD would have started to comply with those statutes' due process protection provisions by sending Ms. McMinimee a *Loudermill* notice. (ECF No. 11, ¶169-171) Mr. Irion then argues that Ms.

McMinimee's 14th Amendment claim fails because YSD could "non-renew" Ms. McMinimee after one year and "the statutes cited by Plaintiff did not create a property interest in Plaintiff's position." (ECF 20, PGID 270) However, RCW 28A.405.210 creates "a constitutionally protected interest in continued employment for certificated teachers," among others. *See Busey v. Richland Sch. Dist.*, 172 F. Supp. 3d 1167, 1175 (E.D. Wn. 2016); RCW 28A.405.210.

As it relates to Mr. Irion's qualified immunity defense, the existence of the Constitutionally protected nature of Ms. McMinimee's RCW 28A.405.210 property right was established before Ms. McMinimee's June 2018 termination. *Roybal v. Toppenish Sch. Dist.*, 871 F.3d 927, 931 (9th Cir. 2017). And Constitutional protections regarding Ms. McMinimee's speech regarding YSD's failure to follow federal law, i.e. Title IX, was also established before Mr. Irion's 2017-2018 adverse actions against Ms. McMinimee. *Keyser v. Sacramento City Unified School District,* 265 F.3d 741, 747-748 (9th Cir. 2001). Ms. McMinimee also pleads that she complained of sexual harassment occurring against YSD students. (ECF No. 11, ¶160) Here, "the Supreme Court has recognized that speech protesting discrimination involves 'a matter inherently of public concern.'" *Burch v. Regents of Univ. of California*, 433 F. Supp. 2d 1110, 1130 (E.D. Cal. 2006)(*citing Connick v. Myers,* 461 U.S. 138, 148 n. 8 (1983); *Givhan v. W. Line Consol. Sch. Dist.,* 439 U.S. 410, 412–13, 417 (1979) (implicitly holding that complaints of discrimination

MOTION TO DISMISS RESPONSE BRIEF
- 15

are matters of public concern)). At least one district court, citing *Connick,* found that an employee's complaints about Title IX violations was a matter of public concern for the purposes of a First Amendment retaliation claim. *Clay v. Bd. of Trustees of Neosho Cty. Cmty. Coll.*, 905 F. Supp. 1488, 1498 (D. Kan. 1995). Given the well-established Constitutional protections germane to Ms. McMinimee's interests and actions, Mr. Irion's qualified immunity defense fails.

### G. Ms. McMinimee properly pleads her wrongful discharge claim.

This Court recently denied an individual school superintendent's motion to dismiss a former employee-plaintiff's wrongful discharge claim and, in doing so, held that "the purpose of the wrongful discharge tort—namely, the deterrence of discharge in violation of public policy—is best served if individual employees, particularly those in a position of power, are held personally liable for conduct that violates public policy and effectuates another employee's termination." *Blackman v. Omak Sch. Dist.*, No. 2:18-CV-0338-TOR, 2019 WL 2396569, at *4 (E.D. Wn. June 6, 2019). Ms. McMinimee respectfully requests that the Court apply its reasoning in *Blackman* and determine that legal grounds exist for Ms. McMinimee to hold Mr. Irion personally liable for Ms. McMinimee's wrongful discharge claim.

### H. Ms. McMinimee clarifies that her defamation, outrage, breach of contract and public record act claims are not against Mr. Irion individually but against YSD.

MOTION TO DISMISS RESPONSE BRIEF
- 16

Ms. McMinimee clarifies that her defamation, outrage, breach of contract, and public record act claims are not against Mr. Irion in his individual capacity but only against the YSD.

### III. CONCLUSION

Defendant Irion's Motion to Dismiss should be denied.

DATED this June 28, 2019.

                            *s/ Matt Crotty*
                            Matthew Z. Crotty, WSBA 39284
                            Crotty & Son Law Firm, PLLC
                            905 W. Riverside Ave. Ste. 404
                            Spokane, WA  99201
                            Telephone:  509-850-7011

# CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to those attorneys of record registered on the CM/ECF system. All other parties, if any, shall be served in accordance with the Federal Rules of Civil Procedure.

Dated this June 28, 2019.

*/s Matthew Crotty*
MATTHEW Z. CROTTY
Crotty & Son Law Firm, PLLC
905 West Riverside, Suite 404
Spokane, WA 99201
Telephone: 509.850.7011