UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SHANNON MCMINIMEE,<br><br>                    Plaintiff,<br><br>     v.<br><br>YAKIMA SCHOOL DISTRICT NO. 7, and JOHN R. IRION, in his individual capacity,<br><br>                    Defendants. | NO:  1:18-CV-3073-TOR<br><br>ORDER GRANTING DEFENDANT DR. JOHN IRION'S MOTION TO DISMISS IN PART; DENYING MOTION IN PART |

BEFORE THE COURT is Defendant Dr. John Irion's Motion to Dismiss (ECF No. 20).  The Motion was submitted without a request for oral argument. The Court has reviewed the file and the records therein, and is fully informed.  For the reasons discussed below, Defendant Irion's Motion to Dismiss (ECF No. 20) is **granted in part and denied in part**.

STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss the complaint for "failure to state a claim upon which relief can be

granted." "The burden of demonstrating that no claim has been stated is upon the movant." *Glanville v. McDonnell Douglas Corp.*, 845 F.2d 1029 (9th Cir. 1988).

A motion to dismiss for failure to state a claim will be denied if the plaintiff alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the plaintiff's "allegations of material fact are taken as true and construed in the light most favorable to the plaintiff[,]" the plaintiff cannot rely on "conclusory allegations of law and unwarranted inferences [] to defeat a motion to dismiss for failure to state a claim." *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996) (citation and brackets omitted). That is, the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements." *Twombly*, 550 U.S. at 555. When deciding, the Court may consider the plaintiff's allegations and any "documents incorporated into the complaint by reference . . . ." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).

A party may amend its pleading with the court's leave, which "[t]he court should freely give . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). "This policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (internal quotation marks omitted). "Dismissal with prejudice and without leave to amend is not appropriate unless it is

clear on de novo review that the complaint could not be saved by amendment." *Id.* at 1052. Leave to amend can and should generally be given, even in the absence of such a request by the party. See *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) ("[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.").

## BACKGROUND[1]

This case involves numerous claims arising out of Plaintiff Shannon McMinimee's employment with the Yakima School District ("YSD").[2] Generally, Plaintiff alleges that YSD and Defendant Dr. John Irion:

(1) discriminated against Plaintiff personally on account of her sex (by changing her job title) in violation of the Equal Pay Act ("EPA");

(2) retaliated against Plaintiff for her opposition to (i) a series of perceived discriminatory (or inequitable) acts or omissions (based on sex, race,

---

1   The following facts are drawn from Plaintiff's Second Amended Complaint and are accepted as true for purposes of this motion only. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

2   Plaintiff asserts 13 claims total, but only nine against Irion. *See* ECF No. 21 at 2. Thus, the Court will only address the nine claims against Irion.

disability, and religion) in violation of the Washington Law Against Discrimination ("WLAD"), the EPA, and the First Amendment of the United States Constitution and (ii) other illegal actions (direct dealing and hiring uncertified teachers) taken by Defendants in violation of public policy—forming the basis for her wrongful discharge claim;

(3)   failed to provide her proper Family Medical Leave Act ("FMLA") notices and retaliated against her for taking FMLA leave;

(4)   withheld Plaintiff's wages in violation of the Washington Wage Rebate Act ("WRA") by changing her job title and by withholding retroactive pay; and

(5)   terminated Plaintiff without a finding of probable cause and without providing a hearing in violation of the Fourteenth Amendment of the United States Constitution.

*See* ECF No. 11 at 3-4, ¶ 12, at 32-54, ¶¶ 104-207.

### A.  **Plaintiff hired at YSD – Unlawful sex discrimination**

On March 13, 2017, Plaintiff and "Irion (on behalf of the YSD) entered into a Letter of Intent for her hiring as the Associate Superintendent for Human Resources." ECF No. 11 at 35, ¶ 121. Thereafter, YSD hired Plaintiff as its "Associate Superintendent for Human Resources." ECF No. 11 at 3, ¶ 10. However, several days after Plaintiff's hiring, Irion contacted Plaintiff "by

telephone and told her that he did not want to upset Associate Superintendent Scott Izutsu for 'political reasons' and it would be better if [she was] called 'Assistant Superintendent for Human Resources.'" ECF No. 11 at 35, ¶ 122. According to Plaintiff, she "believed that this 'Associate-to-Assistant' job title change was a change that was being made only for appearance sake and would have no other impact on her compensation." ECF No. 11 at 35, ¶ 123. Plaintiff appears to clarify that this did, in fact, impact her compensation. ECF No. 20 at 18 ("Irion hid from [Plaintiff] that he was relegating her to a lower pay scale").

Without any additional explanation, Plaintiff alleges the change in job title was actually because of her sex, in violation of the Equal Pay Act. *See* ECF No. 11 at 42-43, ¶ 150 (claiming Irion's statement that he changed her title for "political reasons" is evidence of "discriminatory" intent for her EPA claim). Plaintiff also alleges that Irion changing her title amounts to a willful and intentional withholding of her wages in violation of the Washington Wage Rebate Act. *See* ECF No. 11 at 35-38 , ¶¶ 120-123, 137.

B. **<u>Opposition to Discrimination; Illegal Conduct</u>**

According to Plaintiff, between March 13, 2017 (the date Plaintiff was hired at YSD) and November 6, 2017 (the date Plaintiff was placed on administrative leave), she "opposed illegal activities by the Defendants, acts that Mr. Irion either directed or sanctioned." ECF No. 11 at 3, ¶ 11.

ORDER GRANTING DEFENDANT DR. JOHN IRION'S MOTION TO DISMISS IN PART; DENYING MOTION IN PART ~ 5

1.  **Plaintiff identifies and opposes discrimination based on sex/gender**

Plaintiff alleges that, "almost immediately" upon her hire and thereafter, Plaintiff (1) identified numerous perceived "concerns related to sex/gender equity and sex/gender" discrimination, (2) raised these concerns to Irion, and (3) refused to comply with certain requests from Irion based on these concerns. For example, Plaintiff alleges that, immediately after her hire, she refused Irion's request to discipline a female teacher who had already been "subject to a two-day suspension", where "the Assistant Principal was never disciplined and had been given a positive recommendation" after being involved in the same conduct. ECF No. 11 at 7-8, ¶¶ 20-23. Plaintiff also alleges that, shortly after her hire, she raised concerns the "Executive Director Clinton Endicott . . . used gender loaded language when describing the same or similar actions by female and male administrators" to Irion, but "Irion . . . took no action to address" the conduct. ECF No. 11 at 8, ¶ 24. According to Plaintiff, Irion and Endicott also "focused on the appearance a specific female Principal (who is also Native American) and the way she dressed, which was not consistent with stereotypes about sex/gender" – according to Plaintiff, her appearance and dress "looked no different than male administrators" – and that "this female Principal was ultimately demoted and replaced by a white man[.]" ECF No. 11 at 10-11, ¶ 29.

Plaintiff raises other concerns, but she provides little to no detail regarding the substance of her concerns. For example, Plaintiff alleges she express[ed] concern" to Irion "for how the [] investigation had been handled" regarding a female Assistant Principal's "unsustained" allegations of harassment against a male principal, who later received a promotion, but Plaintiff does not provide any further explanation. ECF No. 11 at 8-9, ¶¶ 25-26; *see also* ECF No. 11 at 6, ¶ 18 (upon her hire, Plaintiff "was advised that [] Irion would protect certain male administrators" and that she "learned that some male administrators" were only given written corrective actions after multiple violations of the YSD policies and procedures related to sex/gender discrimination and harassment); ECF No. 11 at 9, ¶ 27 (complaining that Irion allowed the Yakima Education Association President to treat Plaintiff in a presumably unwelcome, but unspecified, manner that Plaintiff alleges was "because of her sex/gender").

According to Plaintiff "[f]rom March of 2017 to November of 2017, [she] raised the concerns that were brought to her attention" to Irion, but he "did not act on [her] concerns regarding workplace sex/gender discrimination." ECF No. 11 at 6, ¶ 19; *see*, *e.g.*, ECF No. 11 at 8, ¶¶ 20-23 (Plaintiff "repeatedly advised" Irion that "YSD's actions would likely subject it to a quid pro quo sexual harassment claim by the female teacher, a concern that Mr. Irion dismissed outright.").

//

ORDER GRANTING DEFENDANT DR. JOHN IRION'S MOTION TO DISMISS IN PART; DENYING MOTION IN PART ~ 7

2. **Plaintiff identifies and opposes discrimination based on race**

Plaintiff alleges that she "repeatedly raised concerns about how minority employees and students . . . were being treated by the YSD." ECF No. 11 at 12, ¶ 34. For example, Plaintiff alleges that Irion "denied Latino students of non-English speaking families services and outside assessments believed to be necessary by school staff because families did not know how to specifically ask for them." ECF No. 11 at 13, ¶ 37. Plaintiff allegedly "proposed a solution to this issue" but Irion "simply transferred the student to a new school where she continued to receive instruction from the teacher who had previously identified her as not making any educational progress and needing more intensive services." ECF No. 11 at 13, ¶ 37.

Plaintiff points to other perceived injustices, but in many cases, Plaintiff does not specifically allege the complained of events involve any discrimination based on race. *See* ECF No. 11 at 11, ¶¶ 30-32 (complaining that, despite Plaintiff's opposition, Irion transferred a female, African American administrator to a lower paying, less prestigious position because she was often late to work); ECF No. 11 at 13-14, ¶ 38 (complaining that Irion "minimized serious allegations of verbal, emotional, and physical abuse by the Davis High School football coaching staff, where the reporting students were predominately students of color . . . based primarily on [his] outdated experience as a football coach"); *see also* ECF

No. 11 at 14, ¶ 39 (complaining Irion told Plaintiff to "stay in her lane" when Plaintiff tried to "improve how the YSD was responding to student allegations of sexual harassment and sexual violence" because Ms. Mahre, not Plaintiff, was "the YSD's Title IX Officer").

3. **Plaintiff identifies and opposes discrimination based on disability**

Plaintiff alleges that she "repeatedly raised concerns about how . . . students [and employees] with disabilities were being treated by the YSD." ECF No. 11 at 12, ¶ 34. According to Plaintiff:

> This included failing to accommodate employees with disabilities in a manner that is consistent with the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act of 1973 ("Section 504") and failing to provide free, appropriate educations to students with disabilities (particularly minority students with disabilities) under Section 504 and the Individuals with Disabilities Education Act, as amended ("IDEA").

ECF No. 11 at 12, ¶ 34. Specifically, Plaintiff alleges she was "tasked with addressing concerns that a long-time administrator had been engaging in unsafe conduct" even though Irion (1) allegedly knew the administrator was "suffering from health conditions that were causing" the complained-of conduct and (2) never "offered to engage in the ADA interactive process with him". ECF No. 11 at 12-13, ¶ 36. According to Plaintiff, she was "required to place this administrator on administrative leave for failing to conduct evaluations of staff in violation of

Washington law and to negotiate his departure from the YSD." ECF No. 11 at 12-13, ¶ 36.

Plaintiff also complains that "Irion specifically questioned [her] in October and November of 2017 as to why she would engage in the ADA interactive process with an employee seeking accommodations" and "criticized [her] for bringing in an ADA accommodations expert rather than just implementing accommodation based upon the requests of the YEA President, who has no background in the ADA or vocational rehabilitation." ECF No. 11 at 12-13, ¶ 36.

### 4. The "Jack Factors" – alleged sex/gender and racial discrimination

"During the August 2017 timeframe," Plaintiff also "expressed concern" to Irion that the "Jack Factors discriminatorily affected female administrators (as well as non-white administrators)." ECF No. 11 at 5, ¶ 16. According to Plaintiff, "the Jack Factors were the means by which [] Irion determined the salary schedule placement (and, in turn, pay) of managerial level District employees, including the [] 'Superintendent's Group' and the District's administrators." ECF No. 11 at 5, ¶ 15. "The Jack Factors included placing internal hires one step higher on the salary schedule than they would otherwise be placed based on experience and moving individuals up on the salary schedule to ensure that they were being paid more than any subordinate that they would have." ECF No. 11 at 5, ¶ 15. According to Plaintiff, "Irion dismissed [her] concerns" while noting that "the internal employee

whose salary schedule placement was at issue [] was a female and that she would

be making more than her subordinate." ECF No. 11 at 5, ¶ 16. Plaintiff

subsequently "made modifications to the Jack Factors to try to ameliorate the

negative impacts of the Jack Factors to female administrators." ECF No. 11 at 6, ¶

17.

### 5. Opposition to other illegal actions

Plaintiff alleges that she "repeatedly raised concerns regarding Mr. Irion's

[alleged] violation of RCW 41.56.140's prohibition on direct dealing and his desire

to issue teaching contracts to those who did not hold effective teaching certificates

in violation of RCW 28A.405.210." ECF No. 11 at 14-15, ¶ 40. Plaintiff notes

that she raised the issue of hiring teachers who did not have teaching certificates

"[t]hroughout August, September, and October of 2017[.]" ECF No. 11 at 15, ¶

41. Plaintiff does not provide details about the alleged direct dealing, but simply

states "[t]his included direct dealing that Mr. Irion had engaged in during the last

weeks of October 2017 regarding a substitute administrative assistant for himself."

ECF No. 11 at 14-15, ¶ 40. According to Plaintiff, Defendants discharged her in

retaliation for her "repeatedly" telling Irion that he and YSD were violating these

provisions. ECF No. 11 at 47, ¶ 179.

//

//

C. **Issue raised with Plaintiff's conduct; Plaintiff placed on paid leave**

"On or about October 30, 2017," Irion and Plaintiff had a meeting where Irion voiced his concern that "during School Board Executive Sessions, [Plaintiff] would correct him or would field questions from the School Board directly." ECF No. 11 at 16-17, ¶¶ 43-44. According to Plaintiff, she "only spoke up in such meetings when [] Irion provided the School Board with inaccurate or incomplete information on personnel matters" and that she "felt it was her duty to ensure that she was providing truthful and accurate information to the School Board regarding employment matters, and that this duty was paramount." ECF No. 11 at 16-17, ¶¶ 44.

"On November 6, 2017, Defendants placed Ms. McMinimee on paid administrative leave." ECF No. 11 at 17, ¶ 45. According to Plaintiff, Irion told her that she was being placed "on administrative leave [because] she refused to provide a legal opinion/legal advice related to Mr. Irion's desire to issue contracts those who did not hold effective teaching certificates in violation of RCW 28A.405.210 and her above identified candor with the School Board." ECF No. 11 at 17, ¶ 45. According to Plaintiff, "[t]he first justification was a made-up reason for placing her on administrative leave for the simple reason that Ms. McMinimee was (1) not employed by YSD as its legal counsel and (2) had already provided Mr. Irion the requested information and advice from two different attorneys hired

by the YSD" and "[t]he second of the reasons was on its face retaliatory – Ms. McMinimee was being punished by the Superintendent for her candor with the School Board." ECF No. 11 at 17, ¶ 46. Rather, Plaintiff argues, "Defendants' involuntary placement of Ms. McMinimee on administrative leave (and subsequent attempts to fire her) was in retaliation for Ms. McMinimee's good faith reasonable belief that she was opposing the above-referenced illegal activity." ECF No. 11 at 17, ¶ 47.

## D. **Plaintiff requests FMLA leave – FMLA violations**

According to Plaintiff, "Defendants' involuntary placement of Ms. McMinimee on paid administrative leave caused Ms. McMinimee to experience serious health problems which, in turn, forced her to use her rights under FMLA." ECF No. 11 at 19, ¶ 53. Plaintiff asserts that her "health deteriorated substantially, to the point where her father . . . believed that he would have to have her hospitalized." ECF No. 11 at 20, ¶ 56. Plaintiff does not provide any details as to what her "serious health problem" is.

According to Plaintiff, from December of 2017 through March of 2018 she "communicated" to YSD that she "was suffering from medical conditions because of the actions of the District". ECF No. 11 at 20, ¶ 56. On March 15, 2018, Plaintiff informed YSD that she "needed medical workplace leave" and provided "a physician's note dated March 14, 2018." ECF No. 11 at 20, ¶ 57. Plaintiff

asserts that, at this time, "Defendants knew or had reason to know that [her] medical leave might be for FMLA reasons." ECF No. 11 at 20, ¶ 58 (citing 29 C.F.R. § 825.300(b)(1)). Despite this, "Defendants did not give [Plaintiff] an FMLA Eligibility Notice within five business days of March 15, 2018[,]" which, according to Plaintiff, "was the first time the District violated the FMLA." ECF No. 11 at 21, ¶ 60 (emphasis omitted).

On March 26, 2018, Plaintiff (1) informed YSD via e-mail that she had a "serious health condition" and that she was "eligible for" and "intended to take leave under the FMLA" and (2) asked YSD to inform her of (i) how many days she had left for accrued leave and (ii) the date she would exhaust her FMLA leave. ECF No. 11 at 21, ¶¶ 61-62. According to Plaintiff, "Defendants did not give Ms. McMinimee an FMLA Eligibility Notice by April 2, 2018, i.e. within five business days of March 26, 2018"—"the second time the District violated the FMLA". ECF No. 11 at 22, ¶ 64.

On April 3, 2018, YSD – via e-mail – informed Plaintiff that (1) she was eligible for FMLA (2) she had been designated a "key employee" under the FMLA, and (3) that she had seven days to complete and return the District's FMLA medical certification form. ECF No. 11 at 22, ¶ 65. According to Plaintiff, Defendants violated the FMLA because (1) Plaintiff had 15 calendar days pursuant to 29 C.F.R. § 825.305(b) to complete and return the FMLA serious health

condition certification form (as opposed to "seven days") and (2) Defendants failed to include a written "Rights and Responsibilities" notice—according to Plaintiff this was the third, fourth, fifth, and sixth time Defendants violated the FMLA.[3] ECF No. 11 at 22-23, ¶¶ 66-69. "On April 4, 2018, Ms. McMinimee informed YSD that it had violated the FMLA for the above-referenced reasons and that those FMLA violations created illegal barriers that prevented Ms. McMinimee from exercising her FMLA rights." ECF No. 11 at 23, ¶ 70.

On April 16, 2018, Plaintiff provided YSD with a completed "Certification of Health Care Provider for Employee's Serious Health Condition" form. ECF No.

---

[3]    According to Plaintiff, the "Rights and Responsibilities" notice must (1) inform the employee whether "the leave may be designated and counted against the employee's annual FMLA leave entitlement if qualifying"; (2) inform the employee of "[t]he employee's right to substitute paid leave, whether the employer will require the substitution of paid leave, the conditions related to any substitution, and the employee's entitlement to take unpaid FMLA leave if the employee does not meet the conditions for paid leave," and (3) inform the employee as to "arrangements for making [premium payments to maintain health benefits]." ECF No. 11 at 23, ¶¶ 68-69 (brackets in original) (quoting 29 C.F.R. § 825.300(c)(i)(iii)&(iv)).

ORDER GRANTING DEFENDANT DR. JOHN IRION'S MOTION TO DISMISS IN PART; DENYING MOTION IN PART ~ 15

11 at 25, ¶ 77.  On April 17, 2018, Plaintiff provided YSD with a "semi-completed

'APPLICATION FOR FMLA LEAVE' form."  ECF No. 11 at 25-26, ¶ 78.

According to Plaintiff, "[t]he form was 'semi-completed' because YSD had not

informed [her] if she would be required or allowed to access her accrued leave,

what forms of her accrued leave would be available for her to use, and when that

leave would be exhausted, which in turn, rendered her unable to ascertain the begin

and end dates of her FMLA leave."  ECF No. 11 at 25-26, ¶ 78.  The same day,

Plaintiff "informed YSD" that she was "unable to calculate when [she] will

exhaust [her] accrued leave and thus begin accessing FMLA leave consistent with

the District's requirement" and, again, inquired as to when she "will exhaust

FMLA if [she is] required to take the full twelve weeks of FMLA available".  ECF

No. 11 at 26, ¶ 79.

On April 17, 2018, YSD reported to Plaintiff "her sick leave, vacation, and

personal leave balances that existed as of March 27, 2018, but YSD did not, as

required by the FMLA, tell [Plaintiff] as to whether the sick leave, vacation leave,

and personal leave balances would be counted against [her] 12-week FMLA

entitlement" in violation of 29 C.F.R. § 825.300(d)(6).  ECF No. 11 at 26-27, ¶¶

80-82.  Plaintiff alleges that, "[a]s of the date of this complaint the District has yet

to tell [Plaintiff] when her FMLA will begin and when it will end"[4] and that "[t]his, in turn, has caused (and continues to cause) Ms. McMinimee uncertainty as to when the leave will begin and end which, in turn, has caused Ms. McMinimee damages[.]" ECF No. 11 at 27, ¶ 83. Plaintiff appears to clarify that the "uncertainty as to whether or not she is on FMLA [] cost Ms. McMinimee between $600 - $700/day" because she had to "use her own accrued leave". ECF No. 11 at 33, ¶ 112.

E. **YSD withholds retroactive pay raise – Wage Rebate Act violation**

According to Plaintiff, "Irion advised [Plaintiff] at her hiring that he was planning to seek a retroactive pay raise for the Superintendent's Group for the 2016-2017 school year, as well as a pay raise for the Superintendent's Group for the 2017-2018." ECF No. 11 at 36, ¶ 126. The "Superintendent Group" included Plaintiff. ECF No. 11 at 36, ¶¶ 124-125. On June 30, 2017, "Irion made a request that the School Board approve the retroactive pay raise for the Superintendent's Group for the 2016-2017 school year, as well as a pay raise for the

---

[4] Notably, Plaintiff alleges that she was "advised that she would be on paid accrued leave through July 25, 2018" but was "terminated effective June 30, 2018. ECF No. 11 at 31, ¶ 102. It is not clear whether the FMLA leave period overlapped with her accrued leave.

ORDER GRANTING DEFENDANT DR. JOHN IRION'S MOTION TO DISMISS IN PART; DENYING MOTION IN PART ~ 17

Superintendent's Group for the 2017-2018 school year." ECF No. 11 at 36, ¶ 127. According to Plaintiff:

> During the months of July, August, and September 2017, [] Irion advised [Plaintiff] individually and the Superintendent's Group collectively that the retroactive pay raise for the Superintendent's Group for the 2016-2017 school year, as well as a pay raise for the Superintendent's Group for the 2017-2018 school year, would be forthcoming but would be delayed until later in the school year because of certain appearance concerns voiced by the School Board. Mr. Irion also shared that the members of the Superintendents Group would get their individual employment contracts for the year when the raises were approved.

ECF No. 11 at 36-37, ¶ 128. On or about March 28, 2018, the Superintendent's Group all received the promised retroactive pay raises, except for Plaintiff. ECF No. 11 at 37, ¶¶ 129-130.

Plaintiff informed YSD of her position that withholding the pay raise was a violation of Washington Law, citing to the Washington Wage Rebate Act. ECF No. 11 at 37-38, ¶ 131. Plaintiff alleges that she never received a "substantive[] respon[se]" to the allegation. ECF No. 11 at 38, ¶ 132. However, Plaintiff alleges that "[o]n or about June 15, 2018" – a little over a month after Plaintiff filed this action – YSD issued a $3,228.12 check for "retro pay for April 2017-May 2018". ECF No 11 at 38, ¶ 135. Plaintiff claims this "amount does not fully compensate [her] for Defendants' violations of the Wage Rebate Act as it, *inter alia,* does not contain double damages, interest, or attorneys' fees." ECF No. 11 at 37, ¶ 135. //

### F. **Plaintiff's non-renewal of her contract – Due Process violation**

Plaintiff complains that she was "terminated effective June 30, 2018" – i.e. her contract was not renewed – without a notice of, or a finding of, probable cause and without her being given an opportunity to defend herself. ECF No. 11 at 31, ¶ 101-102. Plaintiff alleges that she was entitled to such because (1) she "is considered to be a certificated administrator under Washington Administrative Code 392-121-200(2)" and because (2) "YSD has further explicitly afforded members of the Superintendent's Group 'the rights, notices, and hearings provided by RCW 28A.405.310 as if the Employee were Certificated' by contract." ECF No. 11 at 30, ¶ 97.

### G. **Plaintiff's Claims**

Plaintiff filed suit against Defendants on May 10, 2018 asserting (1) two claims under the FMLA (based on the above-identified technical violations of the FMLA and for alleged retaliation for using FMLA leave) and (2) a Wage Rebate Act Claim (based on the change of job title and withheld retroactive pay raise). ECF No. 1 at 10-16, ¶¶ 38-69. Plaintiff filed the First Amended Complaint (ECF No. 7) on June 7, 2018, adding two claims under the Equal Pay Act based on (1) the alleged pay disparity between herself and Mr. Izutsu and (2) alleged retaliation against Plaintiff for raising gender pay equity concerns. ECF No. 7 at 17-20, ¶¶ 75-88.

Plaintiff filed the Second Amended Complaint (ECF No. 11) ("SAC") on

August 3, 2018.  In Plaintiff's SAC, Plaintiff adds more claims—thirteen claims in

total, but only nine claims against Irion personally.  *See* ECF Nos. 1; 21 at 17

(clarifying certain claims solely brought against YSD).  As to Irion, Plaintiff

asserts a claim **(1/2)** under the FMLA for (i) technical violations of the FMLA and

for (ii) retaliation for her taking FMLA leave, ECF No. 11 at 32-35, ¶¶ 104-119;

**(3)** under the Washington Wage Rebate Act for Irion's alleged withholding of

wages by changing her position and not giving her a retroactive pay raise, ECF No.

11 at 35-38, ¶¶ 120-137; **(4/5)** under the EPA for (i) retaliation based on her

contention that she was placed on administrative leave because of her opposition to

the "Jack Factors", ECF No. 11 at 38-40, ¶¶ 138-142, and for (ii) direct liability for

paying Plaintiff less than Izutsu even though both "conducted substantially equal

work, ECF No. 11 at 40-41, ¶ 147; **(6)** under the WLAD for Defendants alleged

retaliation against Plaintiff for her opposition to discrimination based on race,

gender, religion, disability, and age.  ECF No. 11 at 42, ¶¶ 152-155; **(7)** under 42

U.S.C. § 1983 for violation of her First Amendment based on Defendants alleged

retaliation against Plaintiff for her protected speech "regarding the events of sexual

assault/harassment", "inadequate compliance with Title IX", and compliance with

federal laws on disabilities, ECF No. 11 at 42-44, ¶¶ 156-162; **(8)** under 42 U.S.C.

§ 1983 for violation of Plaintiff's due process rights under the Fourteenth

Amendment regarding the non-renewal of her contract, ECF No. 11 at 44-47, ¶¶ 163-175; and **(9)** for wrongful discharge in violation of public policy based on her allegation that she was discharged for opposing Irion's alleged "direct dealing" and his "issuing teaching contracts to those who do not hold effective teaching certificates", ECF No. 11 at 47-48 at ¶¶ 176-181.

Finally, Plaintiff asserts a claim against YSD (but not Irion) for violation of the Washington Public Records Act, defamation, intentional inflection of emotional distress (outrage), and breach of contract. ECF No. 11 at 48-54, ¶¶ 182-207.

Defendant Irion now requests the Court dismiss all claims against him for failure to state a claim. ECF No. 20. Plaintiff opposes the Motion. ECF No. 21. This Motion is now before the Court.

## DISCUSSION

A. <u>**Family Medical Leave Act**</u>

The Family Medical Leave Act provides employees with "a total of 12 workweeks of leave during any 12-month period" for, *inter alia*, "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612. "The term 'serious health condition' means an illness, injury, impairment, or physical or mental condition that involves— (A) inpatient care in a hospital, hospice, or residential medical care facility; or

(B) continuing treatment by a health care provider." 29 U.S.C. § 2611 (emphasis

omitted). The FMLA also makes it "unlawful for an employer to 'interfere with,

restrain, or deny the exercise of or the attempt to exercise, any right provided' by

the Act." *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1122 (9th Cir. 2001)

(quoting 29 U.S.C. § 2615(a)(1)). This prohibits employees from not only denying

FMLA rights, but also prohibits the employer from making adverse employment

decisions – i.e. retaliating against the employee – based on the employee taking

FMLA leave. *Id*.

Plaintiff seeks to hold Defendant liable for (1) technical violations of the

FMLA that allegedly cost her "between $600-700/day in damages" and (2) alleged

retaliation for her taking FMLA leave, allegedly costing her the promised retro-

active pay raise and the renewal of her contract. Defendant asserts that (1) Plaintiff

does not allege any facts supporting her bald conclusion that she had a serious

medical condition, (2) Plaintiff's claim based on the technical violations must fail

because Plaintiff did not suffer any damages from such, and (3) Plaintiff's claim

for retaliation must be dismissed because Plaintiff's allegations do not give rise to

a reasonable inference that Defendant took any action based on Plaintiff's taking of

FMLA leave. The Court will address each argument in turn.

//

//

1. **Serious medical condition**

Defendant argues that "Plaintiff's complaint [] fails to set forth facts to plausibly infer she had a 'serious health condition.'" ECF No. 20 at 9. Defendant notes that "Plaintiff's complaint simply alleged that being place on paid administrative leave 'caused [her] to experience serious health problems'" and that "her serious health condition was shown by a certification (and accompanying physician letter) that she gave to the District on April 17, 2018." ECF No. 20 at 10 (brackets in original) (quoting ECF No 11 at 19, ¶ 53; citing ECF No. 11 at 32, ¶ 108). Plaintiff argues that she alleges facts that support a reasonable inference that she had a "serious health problem". ECF No. 21 at 4-5.

The Court finds that Plaintiff has pled facts that give rise to a reasonable inference that she had a serious health problem. While her allegation that she has a serious health problem is a bare legal conclusion, she also alleges that her health care provider certified that she had a serious health problem and this was provided to her employer. This gives rise to a reasonable inference that Plaintiff did, in fact, have a serious health problem.

2. **Damages from FMLA technical violations**

Irion argues that Plaintiff did not suffer any harm as a result of the seven alleged technical violations "because she was provided the FMLA benefits to which she was entitled." ECF No. 20 at 9. In support, Irion asserts that Plaintiff

has not alleged she was denied the full 12-weeks of leave.  ECF No. 20 at 8.
However, the facts alleged seem to suggest she did not take the full leave and
Plaintiff repeatedly alleges that she does not know when the FMLA leave began or
ended because YSD did not provide the requested information.  *See* ECF No. 11 at
27, ¶ 84 (YSD informing Plaintiff she will be on approved leave until July 25,
2018), at 31, ¶ 102 (Plaintiff "terminated effective June 30, 2018").  Indeed, Irion
asserts that "Plaintiff took FMLA leave about April 17, 2018 and was advised of
her non-renewal on June 22, 2018"—a period of less than 12 weeks.  ECF No. 20
at 13.

Plaintiff maintains that she "plausibly alleges that Defendant harmed her by
failing to tell her the date her FMLA would start and end, an act (by omission) that
[allegedly] caused her between $600-700/day in damages[.]"  ECF No. 21 at 5.
While it is not entirely clear how Plaintiff accrued the complained-of damages, the
Court finds that Plaintiff's allegations of damages are sufficient to survive a
motion to dismiss.  The details can be better flushed out on a motion for summary
judgment.

3.  **FMLA Retaliation**

The FMLA prohibits employers from using the employee's FMLA "leave as
a factor in the decision to terminate" the employee.  *Xin Liu v. Amway Corp.*, 347
F.3d 1125, 1135 (9th Cir. 2003) (citing *Bachelder*, 259 F.3d at 1124-25).  "At trial,

an employee may prevail on a claim that an employer interfered with her rights by terminating her in violation of FMLA by showing, by a preponderance of the evidence that her taking of FMLA-protected leave constituted a negative factor in the decision to terminate her." *Id.* at 1135-36 (citing *Bachelder*, 259 F.3d at 1125). The plaintiff "can prove this claim, as one might any ordinary statutory claim, by using either direct or circumstantial evidence, or both." *Id.* at 1136. Notably, the Ninth Circuit has expressly declined to apply "a *McDonnell Douglas*-style shifting burden of production analysis, familiar from anti-discrimination law" to such FMLA claims.[5] *Bachelder*, 259 F.3d at 1125.

Defendant argues that "[t]he facts set forth in Plaintiff's complaint do not plausibly suggest that Dr. Irion willfully terminated Plaintiff's employment due to [her] exercising FMLA leave." ECF No. 20 at 12. Defendant asserts that "Plaintiff took FMLA leave about April 17, 2018 and was advised of her non-renewal on June 22, 2018 – a period of more than two months" and that [t]his time period is too attenuated to establish that her non-renewal was a result of her FMLA leave." ECF No. 20 at 13.

---

[5]    The Ninth Circuit expressly declined to address whether the *McDonnell Douglas* anti-discrimination approach is applicable to § 2615(a)(2) claims. *Bachelder*, 259 F.3d at 1125, n.11.

Plaintiff argues that Defendant is "wrong on both the law and facts." ECF No. 21 at 5. First, Plaintiff argues that "[t]he temporal proximity" is "very close" because the "FMLA protected activity" occurred on March 15, 2018 (first notice of need for medical workplace leave), and March 26, 2018 (notice of intent to take leave under FMLA) and the "adverse employment actions" occurred on March 28, 2018 ("depriving" Plaintiff of her "contractually mandated pay increase") and April 12, 2018 (District sending Plaintiff a "*Loudermill*" notice). ECF No. 21 at 5-6; *see* ECF No. 11 at 24, ¶¶ 117-118. Second, Plaintiff argues that the causal link can be inferred from this timing alone and asserts there is additional indicia of causation including "different treatment of similarly situated workers" and the "Defendants' seven violations of the FMLA." ECF No. 21 at 6.

The Court finds that these allegations give rise to a reasonable inference that Defendant took an adverse action based on Plaintiff taking FMLA leave. While merely *receiving* a *Loudermill* notice is not an adverse action, depriving her of a promised pay raise is, and that occurred in close proximity to her taking FMLA. The Court notes that the complained-of conduct appears to be a part of a series of adverse actions taken before Plaintiff requested FMLA leave, but at this stage the Court must take all reasonable inferences in Plaintiff's favor.

//

//

B. **Washington Wage Rebate Act**

The Washington Legislature passed the Wage Rebate Act in 1939 "to protect the *wages* of an employee against any diminution or deduction therefrom by rebating, underpayment, or false showing of overpayment of any part of such wages." *LaCoursiere v. Camwest Dev., Inc.*, 181 Wash. 2d 734, 741 (2014) (emphasis in original) (quoting *Schilling v. Radio Holdings, Inc.,* 136 Wash. 2d 152 (1998)).  To this end, RCW 49.52.050 provides:

> Any employer or officer, vice principal or agent of any employer, whether said employer be in private business or an elected public official, who . . . (2) Wilfully and with intent to deprive the employee of any part of his or her wages, shall pay any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract[.]

Said actors are also subject to civil liability "for twice the amount of the wages unlawfully . . . withheld . . . , together with costs of suit and a reasonable sum for attorney's fees[.]"  RCW 49.52.070.  "Under RCW 49.52.050(2), a nonpayment of wages is willful when it is not a matter of mere carelessness, but the result of knowing and intentional action."  *Ebling v. Gove's Cove, Inc.*, 34 Wash. App. 495, 500 (1983) (citation omitted).

The actor's "genuine belief that he is not obligated to pay certain wages precludes the withholding of wages from falling within the operation of RCW 49.52.050(2) and 49.52.070."  *Id.* (citation omitted).  In other words, "a willful withholding [is] 'the result of knowing and intentional action and not the result of a

bona fide dispute as to the obligation of payment.'" *Champagne v. Thurston Cty.*, 163 Wash. 2d 69, 81 (2008) (internal quotation marks omitted) (quoting *Wingert v. Yellow Freight Sys., Inc.*, 146 Wash. 2d 841, 849 (2002)). A bona fide dispute is a "'fairly debatable' dispute over whether an employment relationship exists, or whether all or a portion of the wages must be paid." *Id.* (quoting *Schilling v. Radio Holdings, Inc.,* 136 Wash. 2d 152, 161-62 (1998)). Determining willfulness is a question of fact reviewed under the substantial evidence standard. *Champagne*, 163 Wash. 2d at 81.

To state a claim for individual liability under the WRA a plaintiff must show that the individual "exercised control over the direct payment of the funds and acted pursuant to that authority." *Ellerman v Centerpoint Prepress, Inc.,* 143 Wash. 2d 514, 521 (2001). This "requires more than a finding that the putative vice principal is managing the employer's business." *Id.* The Washington Supreme Court explained that more expansive liability "could result in substantial unfairness by imposing personal liability on managers or supervisors who had no direct control over the payment of wages." *Id.* at 522.

Irion contends that "Plaintiff's complaint set forth insufficient facts to permit the Court to infer that [he] had control over the direct payment of Plaintiff's retroactive pay" to establish his personal liability under the Washington Wage Rebate Act. ECF No. 20 at 14. Plaintiff contends this argument "fails" because

"Irion (i) signed Ms. McMinimee's employment contract, (ii) changed Ms. McMinimee's employment contract, (iii) told Ms. McMinimee that he would ask the YSD school board to increase Ms. McMinimee's pay under that contract, (iv) and then requested the pay increase."  ECF No. 21 at 7.

Importantly, Plaintiff points to two sources of alleged underpayment.  First, Plaintiff complains that, despite Plaintiff and Irion entering into a Letter of Intent for Plaintiff to be hired as the *Associate* Superintendent for Human Resources, Plaintiff was hired as the *Assistant* Superintendent for Human Resources because Irion did "not want to upset Associate Superintendent Scott Izutsu for 'political reasons'".  ECF No. 11 at 34, ¶¶ 121-122.  Plaintiff alleges this had an "impact on her compensation[.]"  ECF No. 11 at 35-36, ¶ 123.  Second, Plaintiff complains that she was "entitled to retroactive pay increases" as a member of the "Superintendent Group".  ECF No. 11 at 36, ¶ 124.

The Court finds that Plaintiff has alleged facts that plausibly suggest Irion had direct control over the decision to place her in the position of Assistant Superintendent given the facts suggest he unilaterally made the switch.  Arguably, the Letter of Intent established Plaintiff's right to certain pay by contract and Plaintiff was subsequently paid less when Irion changed her position to Associate Superintendent.  However – even assuming this amounts to a withholding of wages, which is questionable – Plaintiff has not alleged any facts suggesting Irion

changed Plaintiff's position *with the intent to deprive her of wages*. *See* RCW 49.52.050. Rather, he did so out of "political reasons", although Plaintiff elsewhere alleges the real reason was because of her sex—either way, this does not amount to an allegation that Irion took an action with the intent to deprive her of wages.

The Court also finds that Plaintiff has alleged facts that plausibly suggest Irion had direct control over the decision to not give Plaintiff a retroactive pay raise. However, Plaintiff has not demonstrated she was entitled to such as a matter of contract. The Court notes that Plaintiff only alleges that "Irion advised [Plaintiff] at her hiring that he was *planning* to seek a retroactive pay raise" and later told Plaintiff that the raise "*would be forthcoming*". ECF No. 11 at 36-37, ¶¶ 126, 128. This does not demonstrate Plaintiff was entitled to the retroactive pay as a matter of contract—plans and promises alone do not establish a contractual right to a raise. *See Cook v. Johnson*, 37 Wash. 2d 19, 23 (1950) ("The law recognizes, as a matter of classification, two kinds of contracts—bilateral and unilateral. A bilateral contract is one in which there are *reciprocal promises*. . . . A unilateral contract is a promise by one party—an offer by him to do a certain thing *in the event the other party performs a certain act*."); RCW 49.52.050 (forbidding paying a wage lower than "the wage such employer is obligated to pay such employee by any *statute, ordinance, or contract*" (emphasis own)). Moreover,

Plaintiff seems to recognize that the YSD School Board was the final decision maker concerning raises.

Accordingly, Plaintiff Wage Rebate Act claim must be dismissed. Plaintiff has leave to file an amended complaint to cure the noted deficiencies.

## C. Equal Pay Act[6]

"The Equal Pay Act forbids wage discrimination based on sex", *E.E.O.C. v. First Citizens Bank of Billings*, 758 F.2d 397, 400 (9th Cir. 1985) (citing 29 U.S.C. § 206(d)(1)), and prohibits employers from discriminating "against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter[,]" 29 U.S.C. § 215(a)(3).

Plaintiff asserts that Defendant is liable under the Equal Pay Act (1) for retaliating against Plaintiff for her opposition to the "Jack Factors", and (2) for paying her male counterpart a higher wage for substantially equal work. The Court addresses each issue in turn.

---

[6] Irion requested the Court dismiss Plaintiff's federal *and* state equal pay act claim. *See* ECF No. 20 at 19. Plaintiff did not respond to Irion's argument regarding the state Equal Pay Act claim and it does not appear Plaintiff ever asserted such a claim. *See* ECF Nos. 11; 21. Accordingly, Defendant's request to dismiss a claim that is not being asserted is **denied as moot**.

### 1. Retaliation for Opposing the "Jack Factors"

Irion argues that Plaintiff's SAC fails to state an Equal Pay Act retaliation claim because Plaintiff did not communicate the substance of an EPA violation, as is required to establish EPA retaliation. ECF No. 20 at 14-17. Plaintiff, on the other hand, argues that she communicated the EPA violation to Irion when she voiced her "concern" to Irion about how the Jack Factors "discriminatorily affected female administrators". ECF No. 21 at 8.

"To fall within the scope of the antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection. This standard can be met, however, by oral complaints, as well as by written ones." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011)).

The Court agrees with Plaintiff that she adequately plead opposition to a perceived EPA violation in alleging that she expressed her concern about the discriminatory impact the factors had on female administrators and made "modifications to the Jack Factors." *See* ECF No. 11 at 5-6, ¶¶ 16-17. These allegations support a reasonable inference that Plaintiff asserted the rights protected under the EPA and "call[ed] for their protection"—although the Court notes the Jack Factors on their face have nothing to do with sex.

## 2. **Direct Liability for Unequal Pay**

"The Equal Pay Act forbids wage discrimination based on sex." *E.E.O.C. v. First Citizens Bank of Billings*, 758 F.2d 397, 400 (9th Cir. 1985) (citing 29 U.S.C. § 206(d)(1)). "To make out a case under the Equal Pay Act, a plaintiff must prove that an employer is paying different wages to employees of the opposite sex for equal work." *Hein v. Oregon Coll. of Educ.*, 718 F.2d 910, 913 (9th Cir. 1983) (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974)). "The jobs held by employees of opposite sexes need not be identical, but they must be 'substantially equal.'" *Id.* (quoting *Gunther v. County of Washington,* 623 F.2d 1303, 1309 (9th Cir.1979), *aff'd on other grounds,* 452 U.S. 161 (1981). "The question of whether two jobs are substantially equal is one that must be decided on a case-by-case basis." *Id.* "Once the plaintiff has established a prima facie case, the burden shifts to the employer to prove that the differential in wages is justified under one of the Equal Pay Act's four exceptions." *Corning Glass Works,* 417 U.S. at 196. The four statutory exceptions are: (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) a differential based on any factor other than sex. *First Citizens Bank of Billings*, 758 F.2d at 400 (citing 29 U.S.C. § 206(d)(1); *EEOC v. Maricopa County Community College District*, 736 F.2d 510, 513 (9th Cir. 1984)).

"The statute explicitly applies to jobs that require equal skills, and not to employees that possess equal skills" so "[t]he only comparison of skills that should be made in a prima facie case is a comparison of skills required by a job." *Hein v. Oregon Coll. of Educ.*, 718 F.2d 910, 914 (9th Cir. 1983). In the Ninth Circuit, "the proper test for establishing a prima facie case in a professional setting [] is whether the plaintiff is receiving lower wages than the average of wages paid to all employees of the opposite sex performing substantially equal work and similarly situated with respect to any other factors, such as seniority, that affect the wage scale." *Id.* at 916. "This recognizes that in a professional setting, wage variations may stem from a multitude of factors that do not implicate sex discrimination." *Id.* "This conclusion is also in harmony with the language of the Equal Pay Act, which requires comparison to 'employees' of the opposite sex", as "[t]he Act speaks of employees only in the plural." *Id.*

Defendant argues the Court should dismiss Plaintiff's EPA claim because Plaintiff does not allege facts demonstrating she and Izutsu did substantially equal work or that the pay differential was *on the basis of sex*. ECF Nos. 20 at 17-18; 22 at 5-6. As to the latter argument, Plaintiff need not prove the pay differential was on the basis of sex to present a prima facie case—whether the disparate pay was based on a factor other than sex is an affirmative defense for which Irion must prove. *See* 29 U.S.C. § 206(d)(1). Rather, given Plaintiff worked in a professional

setting, Plaintiff need only allege facts demonstrating she "is receiving lower wages than the average of wages paid to all employees of the opposite sex performing substantially equal work and similarly situated with respect to any other factors, such as seniority, that affect the wage scale." *See Hein*, 718 F.2d at 916.

As to the former argument, the Court finds that Plaintiff has alleged facts that give rise to a reasonable inference that Plaintiff was paid less than Izutsu for substantially equal work—it appears he is the only male comparator within the Superintendent's Group. *See* ECF No. 11 at 36, ¶ 125. In Plaintiff's SAC, Plaintiff alleges that Defendants violated the Equal Pay Act because Plaintiff was paid less than assistant superintendent Izutsu even though Plaintiff and Izutsu "conducted substantially equal work". ECF No. 11 at 40-41, ¶ 147. In support, Plaintiff alleges that both individuals:

> (a) reported to the District's Superintendent, (b) worked as part of the Superintendent Group throughout the calendar year, (c) were subject to the terms and condition of the District's Management Team Handbook, (d) were subject to the same provisions regarding benefits as set out in the applicable Collective Bargaining Agreement, (e) maintained offices at the District's Central Services building, (f) led various bargaining teams, (g) ostensibly worked similar hours, (h) played key roles in the District's budgeting and staffing, (i) were authorized to sign warrants and contracts the District's behalf, and (j) were required to attend the same Board Meetings, Management Team Meetings, and Cabinet Meetings.

ECF No. 11 at 40-41, ¶ 147.  Irion argues that "[t]hese allegations do not plausibly infer that Plaintiff and Mr. Izutsu performed substantially similar work" and asserts that Plaintiff "fail[ed] to mention that Mr. Izutsu held a completely different job (Assistant Superintendent of Business Services overseeing financial services, building and grounds, student transportation, food services, purchasing, computer services, risk management and security)".  ECF No. 22 at 5-6.  However, Plaintiff's allegations, when viewed in the light most favorable to her, plausibly suggest that she performs substantially similar work, although the Court notes that most of the allegations have nothing to do with whether the two performed similar work—a more exacting review of the merits is better fit for a motion for summary judgment, not a motion to dismiss.

D. **Washington Law Against Discrimination - Retaliation**

Among other things, the Washington Law Against Discrimination prohibits an employer from discriminating "against any person in compensation or in other terms or conditions of employment because of age, sex, race, color, national origin, or the presence of any sensory, mental, or physical disability . . . ."  RCW 49.60.180; *Cornwell v. Microsoft Corp.*, 192 Wash. 2d 403, 411 (2018).  The WLAD also provides protections from retaliation to those that oppose discrimination:

> It is an unfair practice for any employer, employment agency, labor union, or other person to discharge, expel, or otherwise discriminate against any

ORDER GRANTING DEFENDANT DR. JOHN IRION'S MOTION TO DISMISS IN PART; DENYING MOTION IN PART ~ 36

person because he or she has opposed any practices forbidden by this chapter, or because he or she has filed a charge, testified, or assisted in any proceeding under this chapter.

RCW 49.60.210; *Jin Zhu v. N. Cent. Educ. Serv. Dist.-ESD 171*, 189 Wash. 2d 607, 613 (2017). "To establish a prima facie case of retaliation, an employee must show three things: (1) the employee took a statutorily protected action, (2) the employee suffered an adverse employment action, and (3) a causal link between the employee's protected activity and the adverse employment action." *Cornwell*, 192 Wash. 2d at 411-12. "An employee proves causation 'by showing that retaliation was a substantial factor motivating the adverse employment decision.'" *Id.* at 412 (quoting *Allison v. Hous. Auth.,* 118 Wash. 2d 79, 96 (1991)). To establish causation the Plaintiff must demonstrate the offending actor had actual knowledge of the protected activity or "suspected" the employee engaged in protected activity. *Id.* at 418 (adopting the "knew or suspected" standard "because it furthers WLAD's purpose to protect employees from retaliation").

Irion argues that "Plaintiff failed to allege sufficient facts to plausibly show that [he] knew or should have known that her complaints were directed at conduct prohibited by WLAD." ECF No. 20 at 20. The Court disagrees. Viewing Plaintiff's SAC in the light most favorable to her, she raised numerous concerns to Irion regarding perceived discrimination based on race, gender, and disability—all

issues governed by the WLAD.  Indeed, Plaintiff actually refused to comply with some of Irion's requests due to her concerns of sex discrimination, ECF No. 11 at 7-8, ¶¶ 20-23 (refusing to discipline female teacher), and changed the Jack Factors out of the same concern, ECF No. 11 at 5-6, ¶¶ 16-17.  This is more than enough to suggest Irion knew or suspected Plaintiff was engaged in protected activity.

E.  **First Amendment Retaliation Claim**

"In order to establish a prima facie case of retaliation under the First Amendment, [the plaintiff] must show that (1) she engaged in protected speech; (2) the defendants took an 'adverse employment action' against her; and (3) her speech was a 'substantial or motivating' factor for the adverse employment action." *Thomas v. City of Beaverton*, 379 F.3d 802, 807–08 (9th Cir. 2004) (quoting *Coszalter v. City of Salem,* 320 F.3d 968, 973 (9th Cir. 2003)).  Speech is only protected if the plaintiff "spoke 'as a citizen upon matters of public concern" rather than 'as an employee upon matters only of personal interest.'" *Id.* at 808. "[W]hether the plaintiff spoke as a public employee or a private citizen—is a mixed question of fact and law." *Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1129 (9th Cir. 2008).

Once the plaintiff establishes "a prima facie claim, the burden shifts to the employer to demonstrate either that, under the balancing test established by *Pickering v. Board of Education,* 391 U.S. 563, 568 (1968), the employer's

ORDER GRANTING DEFENDANT DR. JOHN IRION'S MOTION TO DISMISS IN PART; DENYING MOTION IN PART ~ 38

legitimate administrative interests outweigh the employee's First Amendment rights or that, under the mixed motive analysis established by *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 287 (1977), the employer 'would have reached the same decision even in the absence of the [employee's] protected conduct.'" *Id.* (internal citations altered) (quoting *Ulrich v. City and County of San Francisco,* 308 F.3d 968, 976-77 (9th Cir. 2002); citing *Bd. of County Comm'rs v. Umbehr*, 518 U.S. 668, 675 (1996)); *Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1102-03 (9th Cir. 2011).

Irion argues that "Plaintiff's First Amendment retaliation claim fails because she spoke as a public employee – not as a private citizen." ECF No. 20 at 22. Irion also argues that "Plaintiff's allegations are [] insufficient to plausibly show that her speech was a substantial motivating factor for any adverse employment action taken against her." ECF No. 20 at 23. The Court finds Plaintiff has failed to state a claim because she does not allege any facts supporting her allegation that she engaged in protected speech and, as a consequence, provides no timeline to determine whether the complained-of adverse actions occurred in proximity to her alleged protected speech.

In Plaintiff's SAC, Plaintiff alleges that she "engaged in protected speech, which is a matter of public concern regarding the events of sexual assault/harassment *students* were facing within YSD, [] YSD's inadequate

compliance with Title IX, and matters of compliance with federal laws associated with serving *students* with disabilities."  ECF No. 11 at 43, ¶ 160 (emphasis own). However, Plaintiff does not provide any detail as to her speech regarding "the events of sexual assault/harassments *students* were facing" or "YSD's inadequate compliance with Title IX", *see* ECF No. 11, and the only details she provided that remotely relate to "matters of compliance with federal laws associated with servicing *students* with disabilities" does not demonstrate there was any discrimination based on disability, *see* ECF No. 11 at 13, ¶ 37 (Latino students of non-English speaking families denied services because they did not know how to specifically ask for them).  Notably, Plaintiff does not specifically allege that Defendants retaliated against her for this conduct, but rather generally asserts – after airing a long list of perceived problems – that "Defendants' involuntary placement of [Plaintiff] on administrative leave (and subsequent attempts to fire her) was in retaliation for [Plaintiff's] good faith reasonable belief that she was opposing the above-referenced illegal activity."  ECF No. 11 at 17, ¶ 47.

Plaintiff has leave to file an amended complaint curing the deficiencies.

## F.  Fourteenth Amendment Claim

"To establish a due process violation, a plaintiff must show that [s]he has a protected property interest under the Due Process Clause and that [s]he was deprived of the property without receiving the process that [s]he was

constitutionally due." *Levine v. City of Alameda*, 525 F.3d 903, 905 (9th Cir. 2008).

As Irion notes, Plaintiff contends: (1) "she had a protected property interest in her Assistant Superintendent position because a non-renewal of her position [as a certificated employee] must be supported by probable cause under RCW 28A.405.210 and .220", and (2) "she was not provided the statutory notice and due process owed as a certificated administrator under RCW 28A.405.300." ECF No. 20 at 24; *see* ECF No. 11 at 44-47, ¶¶ 164, 174. Irion argues that Plaintiff's Fourteenth Amendment claim for violation of her procedural due process should be dismissed because Plaintiff is not a "certificated employee" and thus does not enjoy the above-identified property interests. ECF No. 20 at 24. However, Plaintiff specifically pled that she was (1) "considered to be a certificated administrator under Washington Administrative Code 392-121-200(2)" and that (2) "YSD has further explicitly afforded members of the Superintendent's Group 'the rights, notices, and hearings provided by RCW 28A.405.310 as if the Employee were Certificated' by contract." ECF No. 11 at 30, ¶ 97. In the Reply, Irion simply repeats his assertion that Plaintiff was not a certificated employee, but Plaintiff's allegations take the day on a motion to dismiss—Irion can challenge the veracity on a motion for summary judgment. ECF No. 22 at 8. Under these circumstances, the Court cannot say Irion is entitled to qualified immunity, as the

complained invasion to her property interest, as alleged, is a well-recognized right established long before her termination. Accordingly, Irion has not demonstrated dismissal is proper at this time.

G. **Wrongful Discharge**

Washington recognizes "a common law cause of action for wrongful discharge in violation of a clear mandate of public policy". *Piel v. City of Fed. Way*, 177 Wash. 2d 604, 609 (2013). "The tort of wrongful discharge in violation of public policy is an exception to the at-will employment doctrine." *Awana v. Port of Seattle*, 121 Wash. App. 429, 433 (2004). "[P]ublic policy tort claims generally arise in four areas: '(1) where the discharge was a result of refusing to commit an illegal act, (2) where the discharge resulted due to the employee performing a public duty or obligation, (3) where the [discharge] resulted because the employee exercised a legal right or privilege, and (4) where the discharge was premised on employee "whistleblowing" activity.'" *Piel*, 177 Wash. 2d at 609-610 (quoting *Dicomes v. State,* 113 Wash. 2d 612, 618 (1989). "[T]o assess when an employee may recover for wrongful discharge in violation of public policy[,]" courts must examine:

    (1) the existence of a "clear public policy" ("clarity" element),
    (2) whether "discouraging the conduct in which [the employee] engaged would jeopardize the public policy" ("jeopardy" element),
    (3) whether the "public-policy-linked conduct caused the dismissal" ("causation" element), and

(4) whether the employer is "able to offer an overriding justification for the dismissal" ("absence of justification" element).

*Id.* at 610 (brackets in original) (quoting *Gardner v. Loomis Armored, Inc.,* 128 Wash. 2d 931, 941 (1996)).

Plaintiff alleges that Defendants are liable for wrongful discharge in violation of public policy, asserting Defendants terminated her employment out of retaliation for Plaintiff raising the issue of (1) "direct dealing (RCW 41.56.140)" and (2) "issuing teaching contracts to those who do not hold effective teaching certificates (RCW 28A.405.210)." ECF No. 11 at 47, ¶¶ 178-179. Defendant contends that the tort of wrongful discharge in violation of public policy can only be maintained against the employer, not a supervisor. ECF No. 20 at 33. Plaintiff maintains the opposite position and "respectfully requests that the Court apply its reasoning in *Blackman* and determine that legal grounds exist for [Plaintiff] to hold [] Irion personally liable . . . ." ECF No. 21 at 16.

Irrespective of whether Irion can be liable for wrongful discharge, the Court finds that Plaintiff has failed to state a claim. While Plaintiff alleges that, "[t]hroughout August, September, and October of 2017, [she] repeatedly raised objections to [] Irion's desire to issue teaching contracts to those who did not hold effective teaching certificates", the complained of "termination" took place after May of 2018, at the earliest. This undermines any inference of retaliation based on

proximity of time, and Plaintiff has not alleged any facts that would otherwise suggest her opposition was a factor in her "termination". As for the alleged "direct dealing", Plaintiff does not provide any details other than a vague reference to "direct dealing that Mr. Irion had engaged in during the last weeks of October 2017 regarding a substitute administrative assistant for himself." ECF No. 11 at 14-15, ¶ 40. Without any actual substantive allegations, this is wholly insufficient to demonstrate she engaged in protected conduct. Accordingly, Plaintiff has not plead a viable wrongful discharge claim.

Plaintiff has leave to file an amended complaint to cure the deficiency.

## CONCLUSION

In summary, the Court **grants** Irion's Motion to Dismiss with respect to Plaintiff's (1) FMLA claim based on the technical violations; (2) Wage Rebate Act claim; (3) First Amendment claim; and (4) wrongful discharge claim. Plaintiff has leave file a third amended complaint to cure the deficiencies.

The Court **denies** Irion's Motion to Dismiss as to Plaintiff's (1) FMLA retaliation claim; (2) Equal Pay Act claim for retaliation and direct liability; (3) WLAD claim; and (4) Fourteenth Amendment claim.

//

//

//

ORDER GRANTING DEFENDANT DR. JOHN IRION'S MOTION TO DISMISS IN PART; DENYING MOTION IN PART ~ 44

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.  Defendant Dr. John Irion's Motion to Dismiss (ECF No. 20) is

    **GRANTED IN PART AND DENIED IN PART**.

2.  Plaintiff is allowed twenty-one (21) days from the date of this Order

    within which to file a Third Amended Complaint.

The District Court Executive is hereby directed to enter this Order and

provide copies to counsel.

**DATED** August 7, 2019.



THOMAS O. RICE
Chief United States District Judge