1

2

3

4

5          UNITED STATES DISTRICT COURT

6          EASTERN DISTRICT OF WASHINGTON

7    SHANNON MCMINIMEE,

                                      NO. 1:18-CV-3073-TOR
8                    Plaintiff,

                                      ORDER GRANTING IN PART AND
9          v.                         DENYING IN PART DEFENDANTS'
                                      MOTION FOR SUMMARY
10   YAKIMA SCHOOL DISTRICT NO.       JUDGMENT AND DENYING AS
     7, and JOHN R. IRION, in his     MOOT DEFENDANTS' MOTION
11   individual capacity,             FOR LEAVE TO FILE
                                      DECLARATION
12                   Defendants.

13         BEFORE THE COURT are Defendants' Motion for Summary Judgment

14   (ECF No. 45) and Defendants' Motion for Leave to File the Declaration of Karen

15   Hovis (ECF No. 66).  These matters were submitted for consideration without oral

16   argument.  The Court has reviewed the record and files herein, and is fully

17   informed.  For the reasons discussed below, Defendants' Motion for Summary

18   Judgment (ECF No. 45) is **GRANTED in part** and **DENIED in part** and

19   Defendants' Motion for Leave to File the Declaration of Karen Hovis (ECF No.

20   66) is **DENIED as moot**.

     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
     MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT
     DEFENDANTS' MOTION FOR LEAVE TO FILE DECLARATION ~ 1

**BACKGROUND**

This case arises out of Plaintiff Shannon McMinimee's employment with the Yakima School District ("YSD"). *See* ECF No. 26. Plaintiff alleges that Defendants violated state and federal law by, *inter alia*, placing her on administrative leave and not renewing her employment contract because of her various oppositional activities. *Id.* As outlined below, Defendants seek summary judgment on all of Plaintiff's causes of action. ECF No. 45. The following facts are not in dispute except where noted.[1]

**A. Plaintiff Hired at YSD**

In early March 2017, Plaintiff applied for the position of Superintendent of Human Resources for the Yakima School District. ECF No. 51 at 1, ¶ 1. On March 13, 2017, Superintendent Dr. John ("Jack") Irion provided Plaintiff with a Letter of Intent to hire Plaintiff as the Associate Superintendent of Human Resources. ECF No. 51 at 2, ¶ 2. The offer letter stated that Plaintiff's employment would be subject to the terms and conditions of a Collective

---

[1]    Defendant's Statement of Facts largely fails to cite to the record in violation of Local Civil Rule 56(c)(1)(A). Therefore, after reviewing the entire record, the Court generally relies on the cited record in Plaintiff's Counter Statement of Facts and Defendants Reply Statement of Facts. *See* ECF Nos. 46, 51, 57.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT DEFENDANTS' MOTION FOR LEAVE TO FILE DECLARATION ~ 2

1    Bargaining Agreement ("CBA").  ECF No. 51 at 4, ¶ 10.  However, the CBA

2    referred to in the document did not exist.  ECF No. 51 at 4, ¶ 10; ECF No. 57 at 3,

3    ¶ 10.  Plaintiff produced a CBA that she allegedly relied on that is between the

4    "Yakima Principals' and Directors' Associations and Yakima Public Schools."

5    ECF No. 52-2.  The CBA plainly states that the CBA applies to administrators who

6    "are not recognized by the superintendent as members of the principals' or

7    assistant/associate superintendents' group."  ECF No. 52-2 at 6, ¶ 1.2(B).

8        Plaintiff's one-year contract applied to the 2017-2018 school year.  ECF No.

9    46-1 at 32.  It is undisputed that Plaintiff does not hold any professional

10   certifications.  ECF No. 46-1 at 4, ¶ 9.  YSD reported Plaintiff as a certificated

11   administrator for the purposes of reporting to Office of Professional Practices

12   ("OPP") with the Office of Superintendent of Public Instruction ("OSPI") because

13   there are no reporting categories for non-certificated administrators.  ECF No. 51

14   at 58, ¶ 158; ECF No. 57 at 19-20, ¶ 157.

15       The parties dispute where Plaintiff was initially placed on the salary pay

16   scale when she accepted the offer of employment: Plaintiff asserts that she was told

17   she would be placed at Step 6 of the Associate Superintendent pay scale and

18   Defendants assert that she was hired at Step 1 of the Associate Superintendent pay

19   scale.  ECF No. 51 at 2, ¶ 2; ECF No. 57 at 2, ¶ 2.  The salary at Step 1 of the

20   Associate Superintendent position was $111,312 whereas the salary at Step 6 was

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT
DEFENDANTS' MOTION FOR LEAVE TO FILE DECLARATION ~ 3

$130,286.  ECF No. 51 at 2, ¶ 3.  On March 17, 2020, Dr. Irion contacted Plaintiff by telephone regarding her job position title.  ECF No. 51 at 3, ¶ 6.  The parties dispute the contents and implications of this conversation.  Plaintiff alleges that Dr. Irion told her that it would be better if Plaintiff were called "Assistant Superintendent for Human Resources" so as not to upset Associate Superintendent of Financial Services Scott Izutsu for "political reasons;" Plaintiff believed this change in title was in appearance only.  ECF No. 51 at 3, ¶¶ 6-8.  Defendants assert that Dr. Irion did not tell Plaintiff that he changed the position for political reasons; rather, Dr. Irion changed Plaintiff's position title to Step 6 of Assistant Superintendent in order for Plaintiff to receive a higher compensation than Step 1 of Associate Superintendent.  ECF No. 57 at 2-3, ¶¶ 2, 6.  The salary at Step 6 of the Associate Superintendent position was $127,658.  ECF No. 51 at 2, ¶ 3.

As Assistant Superintendent of Human Resources, Plaintiff was a member of YSD's Superintendent's Group or "Cabinet."  ECF No. 51 at 5, ¶ 14.  Mr. Izutsu, as the Associate Superintendent of Financial Services, was also a member of the Cabinet.  ECF No. 46-3 at 1-5.  Mr. Izutsu was initially hired with YSD as Assistant Superintendent of Financial Services in 2002 before becoming Associate Superintendent in 2013.  ECF No. 46 at 4, ¶ 5 (citing ECF No. 46-3 at 1, ¶¶ 2-3).  While Plaintiff and Mr. Izutsu had different positions and duties, generally the superintendent positions were "all connected" and job duties overlapped or were

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT
DEFENDANTS' MOTION FOR LEAVE TO FILE DECLARATION ~ 4

1   similar in certain respects.  *See* ECF No. 51 at 5-9, ¶¶ 14-24; ECF No. 57 at 3-4, ¶¶

2   14-24.  However, in addition to overseeing Human Resources, Plaintiff, as a

3   licensed attorney, provided legal opinions, guidance, and interpretation even

4   though she was not legal counsel for YSD.  ECF No. 51 at 11, ¶ 30.

5        In terms of salary, YSD paid Mr. Izutsu approximately $30,000 more per

6   year than Plaintiff.  ECF No. 51 at 12, ¶ 34.  On June 30, 2017, Dr. Irion

7   recommended a 4% pay increase for Mr. Izutsu and a 3.7-3.8% pay increase for the

8   remaining female members of the Cabinet.  ECF No. 51 at 12, ¶ 35.  Ultimately,

9   for the 2017-2018 calendar year, YSD paid Mr. Izutsu $197,383.00 and Plaintiff

10  $163,565.00.  ECF No. 51 at 12, ¶ 36.

11       **B.  Plaintiff's Opposition to YSD Practices**

12       Between March 13, 2017 and November 6, 2017, Plaintiff alleges that she

13  opposed various illegal activities by the Defendants, acts that Dr. Irion directed or

14  sanctioned.  ECF No. 51 at 14, ¶ 42.  Plaintiff alleges an extensive list of activities

15  she opposed, which include: (1) Defendants' unequal treatment of employees

16  based on gender, (2) Defendants' failure to address sex/gender discrimination

17  against female YSD employees, (3) Defendants' discrimination against employees

18  based on their failure to conform to certain sex/gender stereotypes, (4) Defendants'

19  unequal treatment of employees and students based on race, (5) Defendants'

20  violation of RCW 41.56.140's prohibition on direct dealing, (6) Defendants' desire

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT
DEFENDANTS' MOTION FOR LEAVE TO FILE DECLARATION ~ 5

to issue teaching contracts to those who did not hold effective teaching certificates in violation of RCW 28A.405.210, (7) Defendants' failure to comply with federal laws regarding employees and students with disabilities, (8) Defendants' failures to comply with Title IX regarding student allegations of sexual harassment and violence, (9) Dr. Irion's different treatment of employees and members of the community based on religious affiliation, (10) Dr. Irion's failure to respond to concerns regarding understaffing in the Human Resources Department, (11) YSD's failure to exercise reasonable care in the supervision and protection of students in its custody, (12) YSD's violations of the Open Public Meetings Act and the Public Records Act; (13) YSD's violations of the Family Educational Records Privacy Act, and (14) YSD's failure to enforce School Board Operational Procedures.  ECF No. 51 at 15-16, ¶¶ 43-44.  Defendants admit that Plaintiff raised workplace concerns consistent with her management duties, but otherwise deny Plaintiff's allegations.  ECF No. 57 at 6, ¶¶ 43-44.

Regarding the treatment of teacher and staff, Plaintiff fielded several concerns from principals, assistant principals, and other employees who reported workplace concerns regarding disparate treatment on the basis of gender, race, and religion after which Plaintiff discussed such concerns with Dr. Irion and Ms. Cecilia Mahre, YSD's Title IX Coordinator.  *See generally* ECF No. 51 at 16-26, ¶¶ 45-67.  While generally objecting on the basis of relevance and hearsay,

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT
DEFENDANTS' MOTION FOR LEAVE TO FILE DECLARATION ~ 6

Defendants specifically deny that Dr. Irion attempted to discipline a female employee and tell the employee's husband about an alleged affair, that Plaintiff told the Cabinet that she found a pattern of inappropriate behavior regarding a male employee's conduct to female employees, that Plaintiff reported that there was a pattern of YSD hiring male principals over female principals, that Dr. Irion criticized female employees' attire, and that Plaintiff raised pay inequities based on gender. ECF No. 57 at 6-7, ¶¶ 51, 53, 57-58, 60, 65. Defendants assert that "[a]ny comments made by Plaintiff would have been consistent with her management duties." ECF No. 57 at 7, ¶ 60.

Regarding students and parents, Plaintiff reported several concerns to Dr. Irion that white students and families were favored over students and families of color, including that YSD was not providing equal services to Spanish speaking families. *See generally* ECF No. 51 at 26-29, ¶¶ 68-72. Defendants deny Plaintiff's allegations. ECF No. 57 at 7-8, ¶¶ 68-72.

Regarding opposing YSD policies and practices, Plaintiff opposed and reported concerns to Dr. Irion including concerns regarding Dr. Irion's system of placing employees on the pay scale known as the "Jack Factors," perceived violations of the Open Public Meetings Act, Title IX concerns, unprofessional conduct of Steve McKenna, the President of the Yakima Education Association, Dr. Irion's perceived direct dealing in attempting to hire an interim administrative

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT DEFENDANTS' MOTION FOR LEAVE TO FILE DECLARATION ~ 7

assistant, and the staffing of the Human Resources Department. *See generally* ECF No. 51 at 29-37, ¶¶ 73-85. Specifically, Plaintiff alleges she made only one statement to Dr. Irion to the effect of: "The Jack Factors are creating a spiral that is causing the men to be paid more than women. We are going to keep paying men more than women if we keep using these factors. This is gender-based pay discrimination is going to cause the District liability. And I will not support it." ECF No. 51 at 30, ¶ 73(e). Plaintiff otherwise generally asserts that "she had expressed [her] concerns about the Jack Factors to others, like Ms. Mahre." ECF No. 51 at 30, ¶ 73(d). As it relates to these alleged reports, Defendants generally deny Plaintiff's allegations, specifically asserting that Plaintiff did not tell Dr. Irion that the "Jack Factors" discriminated due to gender, Plaintiff may have only suggested training on the Open Public Meetings Act, Dr. Irion never told Plaintiff to "stay in her lane" or "mind your own business," Plaintiff did not "confront" Dr. Irion, and that Plaintiff's management duties included making suggestions for improvement. ECF No. 57 at 8-11, ¶¶ 73-85.

Regarding teacher certificates, it is undisputed that YSD faced concerns regarding teachers in classrooms whose certifications lapsed. ECF No. 51 at 37-38, ¶¶ 86. Dr. Irion wanted children to have consistent teachers throughout the school year. ECF No. 51 at 38, ¶ 87. To avoid issuing teaching contracts to teachers whose certifications lapsed, Plaintiff sought legal advice from an attorney

1  who proposed that YSD issue personal services contracts to teachers with lapsed

2  certificates to be present in the classroom with a certificated substitute.  ECF No.

3  51 at 38, ¶ 87.  Dr. Irion asked Plaintiff to confer with a second attorney to confirm

4  this advice.  ECF No. 51 at 38, ¶ 87.  Plaintiff conferred with a second attorney

5  who agreed with the advice except that on the point of whether YSD would have to

6  self-report the practice to OPP.  ECF No. 51 at 38, ¶ 87.

7       Dr. Irion stated there "may have been" other instances where Plaintiff told

8  him that YSD was violating the law.  ECF No. 51 at 42, ¶ 91.

9  **C.  Plaintiff Placed on Administrative Leave**

10       On October 30, 2017 and November 6, 2017, Dr. Irion asked Plaintiff if the

11  attorneys' advice on issuing personal services contracts to teachers with lapsed

12  certificates was legal.  ECF No. 51 at 38, ¶ 87.  At the November 6, 2017, Cabinet

13  meeting, Plaintiff raised the lapsed teacher certificate issue but would not say

14  whether the practice was legal.  ECF No. 57 at 11-12, ¶ 86.  After the meeting, Dr.

15  Irion repeatedly asked Plaintiff whether the practice was legal but Plaintiff refused

16  to provide a definitive answer.  ECF No. 51 at 38, ¶ 87; ECF No. 57 at 11-12, ¶¶

17  86, 89.  As a result of this conversation, Dr. Irion placed Plaintiff on paid

18  administrative leave citing her insubordination for failing to give an answer on

19  whether YSD's practices were legal.  ECF No. 51 at 38, ¶ 87.  Dr. Irion "needed to

20  have absolute trust of members of Cabinet."  ECF No. 57 at 13, ¶ 89.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT
DEFENDANTS' MOTION FOR LEAVE TO FILE DECLARATION ~ 9

1    Plaintiff asserts that Dr. Irion provided an additional justification for placing

2    her on administrative leave: Plaintiff would correct Dr. Irion or field questions

3    from the School Board that Dr. Irion "believed made him look bad."  ECF No. 51

4    at 42, ¶ 92.  Defendants deny this allegation.  ECF No. 57 at 13, ¶ 92.  However,

5    Dr. Irion had concerns regarding Plaintiff's performance, including "her approach

6    and how she was conducting business … [i]t was really stirred up in the

7    District…." ECF No. 51 at 51-52, ¶¶ 129-130.

8    Between 2007 and 2018, YSD used a progressive discipline process in order

9    to determine whether to investigate an employee for allegations of dishonesty.

10    ECF No. 51 at 43, ¶ 94.  Plaintiff asserts that this process applies to all employees.

11    ECF No. 51 at 43, ¶ 96.  However, Defendants assert that the progressive

12    discipline system did not apply to Plaintiff because the system does not apply to

13    members of the Cabinet unless expressly provided in the Cabinet employee's

14    contract.  ECF No. 57 at 14, ¶ 93.  Plaintiff was placed on administrative leave

15    without progressive discipline.  ECF No. 51 at 43, ¶ 96.

16    Plaintiff identified other YSD employees who were charged with dishonesty

17    or insubordination who were not fired or otherwise disciplined.  ECF No. 51 at 45-

18    51, ¶¶ 99-112.  Defendants object that Plaintiff's identified employees were not

19    members of the Cabinet.  ECF No. 57 at 14-15, ¶¶ 101-103, 106, 112.

20    //

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT
DEFENDANTS' MOTION FOR LEAVE TO FILE DECLARATION ~ 10

### D. Plaintiff's Family Medical Leave Act Leave

On March 15, 2018, Plaintiff notified YSD that she needed workplace leave and attached a physician's note that was dated March 14, 2018. ECF No. 51 at 59, ¶ 163. YSD did not provide Plaintiff FMLA Eligibility Notice within five business days. ECF No. 51 at 60, ¶ 164.

On March 26, 2018, Plaintiff emailed YSD requesting FMLA and attached doctor notes dated for March 14, 2018 and March 22, 2018. ECF No. 51 at 60, ¶ 165. In this email, Plaintiff requested "what work calendar date … you project will be my last day of having accrued leave available and then what work calendar date you project that I will exhaust FMLA." ECF No. 51 at 60, ¶ 166. YSD did provide Plaintiff FMLA Eligibility Notice within five business days but provided the same on April 3, 2018. ECF No. 51 at 60, ¶ 167; ECF No. 57 at 21, ¶ 167.

On April 3, 2018, YSD emailed Plaintiff and informed Plaintiff among other things that she was eligible for FMLA and Plaintiff had seven days to return the FMLA medical certification form. ECF No. 51 at 60-61, ¶ 168. On April 4, 2018, Plaintiff emailed YSD and informed them of technical FMLA violations. ECF No. 51 at 61-62, ¶ 171.

On April 17, 2018, Plaintiff emailed YSD that the failure to provide information regarding when her accrued and FMLA hours would expire was causing her harm. ECF No. 51 at 61-62, ¶ 171. That same day, YSD informed

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT
DEFENDANTS' MOTION FOR LEAVE TO FILE DECLARATION ~ 11

Plaintiff (1) that her medical leave commenced on March 27, 2018, (2) that she had 55.75 days of sick leave, 27.5 days of vacation, and 2 days of personal leave, and (3) that her leave balances would be exhausted on July 25, 2018. ECF No. 56 at 5. Plaintiff alleges that YSD caused $30,000 in damages related to her taking accrued leave. ECF No. 51 at 61-62, ¶ 171.

### E.  Plaintiff's Contract is Not Renewed

In March 2018, YSD paid the Cabinet, except for Plaintiff, retroactive pay increases for the 2017-2018 school year after Dr. Irion proposed the increase to the School Board. ECF No. 51 at 56-57, ¶¶ 151-156. Plaintiff received her pay increase in full in June 2018 after ongoing settlement negotiations broke down. ECF No. 51 at 57, ¶ 155; ECF No. 53-2 at 71.

Dr. Irion learned that Plaintiff made an alleged misrepresentation in her employment application that stated she had never resigned in lieu of termination. ECF No. 51 at 55-56, ¶¶ 147-149. Plaintiff asserts she voluntarily resigned from the Tacoma School District in September 2016 due to her father's ongoing health care requirements. ECF No. 51 at 2-3, ¶¶ 4-5. Defendants assert that Plaintiff resigned in lieu of termination based on a severance agreement with the Tacoma School District. ECF No. 57 at 2, ¶ 5; ECF No. 46-6 at 26, ¶ 144.

On April 12, 2018, while Plaintiff was on FMLA leave, YSD sent Plaintiff a *Loudermill* notice for a disciplinary hearing set for the following week regarding

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT
DEFENDANTS' MOTION FOR LEAVE TO FILE DECLARATION ~ 12

1  the alleged resignation in lieu of termination issue.  ECF No. 51 at 62, ¶¶ 172-173.

2  Plaintiff offered alternative dates but Defendant never rescheduled: no *Loudermill*

3  hearing occurred.  ECF No. 51 at 62, ¶ 174.  Defendants assert a *Loudermill*

4  hearing was not required under Plaintiff's employment contract.  ECF No. 57 at

5  21, ¶ 172.  Plaintiff's one-year contract was not renewed.  ECF No. 46 at 16, ¶ 36.

6       Plaintiff filed numerous public records requests with YSD.  ECF No. 51 at

7  62, ¶ 175.  YSD has not responded to and/or administratively closed some of

8  Plaintiff's requests.  ECF No. 51 at 62-63, ¶¶ 175-178.

9                              **DISCUSSION**

10  **A.  Summary Judgment Standard**

11       The Court may grant summary judgment in favor of a moving party who

12  demonstrates "that there is no genuine dispute as to any material fact and that the

13  movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In ruling

14  on a motion for summary judgment, the court must only consider admissible

15  evidence.  *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002).  The

16  party moving for summary judgment bears the initial burden of showing the

17  absence of any genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S.

18  317, 323 (1986).  The burden then shifts to the non-moving party to identify

19  specific facts showing there is a genuine issue of material fact.  *See Anderson v.*

20  *Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  "The mere existence of a scintilla

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT
DEFENDANTS' MOTION FOR LEAVE TO FILE DECLARATION ~ 13

of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Id.* at 248. Further, a material fact is "genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party. *Id.* The Court views the facts, and all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Summary judgment will thus be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## B. *Monell* Liability

Defendants move for summary judgment on Plaintiff's § 1983 claims on the grounds that Defendant YSD is shielded from *Monell* liability because Plaintiff failed to allege that her constitutional rights were violated due to an official policy and the Defendant Superintendent Dr. Irion was not a final policymaker. ECF No. 45 at 5-9. However, Plaintiff asserts she never alleged *Monell* liability and that all Constitutional claims are against Defendant Dr. Irion only. ECF No. 50 at 35. Therefore, summary judgment on this claim, if any, is appropriate.

//

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT
DEFENDANTS' MOTION FOR LEAVE TO FILE DECLARATION ~ 14

C.  **Section 1983, First Amendment**

Defendants move for summary judgment on Plaintiff's First Amendment claim for retaliation on the grounds that Plaintiff's speech was made in the course of her employment as a public employee, Plaintiff lacks evidence that Defendants were aware Plaintiff was involved in protected speech, Plaintiff lacks evidence of discrimination by Defendants under Title IX, the ADA, and the Rehabilitation Act, Plaintiff lacks evidence her speech was a substantial motivating factor for Defendants' actions, and Defendants would have reached the same decision even if Plaintiff had not been involved in protected speech.  ECF No. 45 at 26-32. Plaintiff argues she spoke on matters of public concern as a private citizen for which was the motivating factor in her adverse employment action.  ECF No. 50 at 24-29.  As the issue of whether Plaintiff's speech was protected while made in her official capacity is dispositive, the Court does not address the remaining arguments.

"[A] governmental employer may impose certain restraints on the speech of its employees, restraints that would be unconstitutional if applied to the general public." *City of San Diego v. Roe*, 543 U.S. 77, 80 (2004).  To determine whether a public employee has alleged a violation of her First Amendment rights as a result of retaliation for her speech, courts consider whether (1) the plaintiff spoke on a matter of public concern; (2) the plaintiff spoke as a private citizen or public

employee; (3) the plaintiff's protected speech was a substantial or motivating

factor in the adverse employment action; (4) the state had an adequate justification

for treating the employee differently from other members of the general public;

and (5) the state would have taken the adverse employment action even absent the

protected speech.  *Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1103 (9th

Cir. 2011).  The plaintiff bears the burden of proof on the first three areas of

inquiry, but the burden shifts to the government to prove the last two.  *Id.*  "[F]or

purposes of a First-Amendment retaliation claim, being placed on involuntary paid

leave can *itself* be an adverse employment action."  *Campbell v. Hawaii Dep't of

Educ.*, 892 F.3d 1005, 1016 (9th Cir. 2018); *Dahlia v. Rodriguez*, 735 F.3d 1060,

1078 (9th Cir. 2013); *see also Kennedy v. Bremerton Sch. Dist.*, 869 F.3d 813, 822

(9th Cir. 2017) (accepting coach's placement on paid administrative leave as an

adverse employment action).

Defendants argue Plaintiff's speech was made in her capacity as a public

employee.  ECF No. 45 at 28.  "[W]hen public employees make statements

pursuant to their official duties, those statements do not receive First Amendment

protection."  *Marable v. Nitchman*, 511 F.3d 924, 929 (9th Cir. 2007) (citing

*Garcetti v. Ceballos*, 547 U.S. 410, 414-17 (2006)).  "[T]he determination whether

the speech in question was spoken as a public employee or a private citizen

presents a mixed question of fact and law."  *Posey v. Lake Pend Oreille Sch. Dist.*

1   *No. 84*, 546 F.3d 1121, 1129 (9th Cir. 2008).  "First, a factual determination must

2   be made as to the 'scope and content of a plaintiff's job responsibilities.'"  *Johnson*

3   *v. Poway Unified Sch. Dist.*, 658 F.3d 954, 966 (9th Cir. 2011) (citing *Eng. v.*

4   *Cooley*, 552 F.3d 1062, 1071 (9th Cir. 2009)).  This inquiry should rely on

5   practical considerations rather than mechanical reliance on formal or written job

6   descriptions.  *Id.*  Relevant factors to consider include whether the employee

7   communicated with individuals outside her chain of command, whether the

8   communication was a routine report within typical job duties or broad concerns

9   about corruption or systemic abuse, and whether the employee speaks in

10  contravention to a supervisor's orders.  *Dahlia*, 735 F.3d at 1074-75.  "Second, the

11  'ultimate constitutional significance' of those facts must be determined as a matter

12  of law."  *Johnson*, 658 F.3d at 966 (citing *Eng*, 552 F.3d at 1071).  The plaintiff

13  bears the burden of showing she spoke in the capacity of a private citizen and not a

14  public employee.  *Eng*, 552 F.3d at 1071.

15          Particularly instructive on this issue is *Hagen v. City of Eugene*, 736 F.3d

16  1251 (9th Cir. 2013), where K-9 Officer Hagen expressed his concerns about

17  officer safety to coworkers and others within the chain of command at the Eugene

18  Police Department.  The evidence at trial established that his concerns were

19  directed to his coworkers and his superior officers.  *Id*. at 1258.  In reversing the

20  jury's verdict in his favor, the Ninth Circuit held that the defendants were entitled

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT
DEFENDANTS' MOTION FOR LEAVE TO FILE DECLARATION ~ 17

1  to judgment as a matter of law because "Hagen raised his concerns about his and

2  his fellow officers' job safety internally and within the chain of command [which]

3  cements our conclusion that his comments were made as a public employee, and

4  not as a private citizen." *Id*. at 1259.

5        Here, Defendants argue Plaintiff made her alleged oppositional comments

6  within the scope of her job responsibilities because her job included monitoring

7  YSD's compliance with state and federal employment laws and regulations. ECF

8  No. 45 at 29; *see also* ECF No. 46-1 at 25-26; ECF No. 51 at 43, ¶ 93. Plaintiff's

9  arguments that she spoke as a private citizen are inconsistent with, if not

10  contradicted by, the record. ECF No. 50 at 27. Plaintiff attempts to isolate her role

11  as Superintendent of Human Resources to addressing only staff, not student, issues

12  so that any statements regarding student issues were taken outside the scope of her

13  job responsibilities. *Id.* However, Plaintiff's job description includes the primary

14  functions of promoting "the overall efficiency of the school system" and

15  maximizing "education opportunities for students." ECF No. 46-1 at 25-26. As

16  the Superintendent of Human Resources, Plaintiff was tasked with reviewing and

17  interpreting applicable state and federal employment laws and regulations and

18  monitoring such compliance as well as coordinating, establishing, and maintaining

19  sound salary and wage administration practices. *Id.* Plaintiff advised YSD on

20  federal law compliance, including student issues. ECF No. 51 at 11, ¶¶ 29-32.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT
DEFENDANTS' MOTION FOR LEAVE TO FILE DECLARATION ~ 18

1   Any legal advice that Plaintiff provided, even if outside her technical job

2   description, was taken within the scope of her employment. *See, e.g.*, ECF No. 51

3   at 11, ¶ 30 ("I could access her for legal opinions, guidance, interpretation" even

4   though Plaintiff was not the "attorney by title in our district."); ECF No. 57 at 9, ¶

5   79 ("[S]he has a wealth of knowledge about a variety of topics, and though

6   something might not be a part of her assignment at times would provide support to

7   staff because of her expertise.").

8        Moreover, Plaintiff's speech was made internally to her supervisor Dr. Irion

9   and co-worker Ms. Mahre, the Title IX compliance officer, regarding issues

10  concerning federal laws like Title IX for which the Dr. Irion and Ms. Mahre were

11  responsible. ECF No. 50 at 27. Plaintiff's claim that Dr. Irion told her to "stay in

12  her lane," which Defendants deny (ECF No. 57 at 8, ¶ 75), is not dispositive. ECF

13  No. 50 at 27. Construing this evidence in light most favorable to Plaintiff, no jury

14  could reasonably conclude that Plaintiff's speech was made outside the scope of

15  her job responsibilities. Plaintiff's speech is akin to *Hagen*, where the employee

16  became aware of an issue in the scope of his employment and proceeded to report

17  concerns about workplace issues to supervisors and coworkers. *See Hagan*, 736

18  F.3d at 1258-59. Because Plaintiff did not engage in protected speech, Defendants

19  are entitled to summary judgment on this claim.

20  //

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT
DEFENDANTS' MOTION FOR LEAVE TO FILE DECLARATION ~ 19

### D.  Section 1983, Procedural Due Process

Defendants move for summary judgment on Plaintiff's procedural due process claim on the grounds that Plaintiff was not a certified administrator, was not terminated from employment, and lacked a property interest in continued employment.  ECF No. 45 at 11; ECF No. 45 at 32-34.  Plaintiff asserts she was a certified administrator and Defendants' failure to provide her with procedural due process deprived her of the property interest in renewed employment.  ECF No. 50 at 29-30.

The Fourteenth Amendment protects against deprivation of life, liberty, or property without due process of law.  *Ingraham v. Wright*, 430 U.S. 651, 672 (1977).  Courts analyze procedural due process claims in two steps.  First, the court asks whether there was deprivation of a constitutionally protected liberty or property interest.  *McQuillion v. Duncan*, 306 F.3d 895, 900 (9th Cir. 2002).  If the court finds a protected interest, it proceeds to step two to determine if there was a denial of adequate procedural protections.  *Id.*

The Fourteenth Amendment protects the property interest an individual "has already acquired."  *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 576 (1972).  In order to assert a property interest for a procedural due process claim, a person must "have a legitimate claim of entitlement" to the protected interest.  *Town of Castle Rock, Colo. v. Gonzalez*, 545 U.S. 748, 756 (2005).  "Property

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT
DEFENDANTS' MOTION FOR LEAVE TO FILE DECLARATION ~ 20

1    interests are not created by the Constitution, 'they are created and their dimensions

2    are defined by existing rules or understandings that stem from an independent

3    source such as state law.'"  *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 538

4    (1985) (citing *Roth*, 408 U.S. at 577).  A statute that requires an employer to

5    provide a specified reason for an adverse employment action creates a protected

6    property interest for the employee.  *Sanchez v. City of Santa Ana*, 915 F.2d 424,

7    428-29 (9th Cir. 1990); *see also Roybal v. Toppenish Sch. Dist.*, 871 F.3d 927,

8    931-32 (9th Cir. 2017) (Washington statute requiring adverse change in school

9    principal contract status to be supported by probable cause gave rise to

10   constitutionally protected property interest).

11       Here, the parties dispute whether Plaintiff was a certificated administrator

12   for the purposes of RCW 28A.405.310 and RCW 28A.405.300.  ECF No. 45 at 10-

13   11; ECF No. 50 at 29-30.  It is undisputed that Plaintiff did not hold a school

14   administrator certificate.  ECF No. 46-1 at 4, ¶ 9.[2]  Plaintiff asserts that she is a

15   certificated administrator because they reported her as one to OSPI.  ECF No. 50 at

16   29.  However, Plaintiff does not dispute that YSD is required to submit "S-275"

17   forms for each employee to OSPI which does not have a non-certificated

18

19   [2]    Assistant superintendents are not required to hold professional certificates.

20   *See* RCW 28A.410.120.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT
DEFENDANTS' MOTION FOR LEAVE TO FILE DECLARATION ~ 21

1    administrator category.  ECF No. 46-1 at 4, ¶ 9.  Assistant superintendents are

2    reported in the "S-275" form as "certificated" for the purpose of the electronic

3    personnel reporting process submitted to OSPI.  *Id.*; *see also* Wash. Admin. Code

4    392-121-200 ("As used *in this chapter*," assistant superintendent means

5    certificated employee) (emphasis added).

6         Plaintiff also argues she is a certificated employee because otherwise "YSD

7    would not have sent [Plaintiff] a *Loudermill* notice.  ECF No. 50 at 29.  Defendants

8    assert *Loudermill* hearings may be provided as a best practice even if an employee

9    does not have a protected property interest.  ECF No. 55 at 8.  Plaintiff does not

10   provide any authority, and the Court finds none, that provides that receipt of a

11   *Loudermill* notice makes an employee certificated.  As such, Plaintiff was not a

12   certificated employee.

13        As an employee without a professional certificate on a one-year contract,

14   Plaintiff was not entitled to the state statutory protections set forth in RCW

15   28A.405 *et seq.*  ECF No. 45 at 33.  Plaintiff did not have a right to challenge the

16   nonrenewal of her contract.  It is undisputed that Plaintiff was paid in full under

17   her contract.  ECF No. 50 at 31.  Even construing the evidence in the light most

18   favorable to Plaintiff, there is no genuine issue of fact that Plaintiff was not a

19   certificated employee, was not terminated from her position, and was provided all

20   benefits due under her one-year contract.  Accordingly, Plaintiff cannot claim her

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT
DEFENDANTS' MOTION FOR LEAVE TO FILE DECLARATION ~ 22

due process rights were violated based on a statute governing the procedures by which a certificated employee may be terminated.  Defendants are entitled to summary judgment on this claim.

### E.  Qualified Immunity

Defendants move for summary judgment on Plaintiff's § 1983 claims on the grounds that Defendant Dr. Irion is entitled to qualified immunity liability as to the alleged violations of the First and Fourteenth Amendments.  ECF No. 45 at 9-11.  As described *supra*, there are no constitutional violations.  As such, the qualified immunity defense is moot.

### F.  Family and Medical Leave Act

Defendants move for summary judgment on Plaintiff's Family and Medical Leave Act ("FMLA") claims based on interference and discrimination/retaliation.  ECF No. 45 at 11-18.

#### 1.  Interference

Defendants move for summary judgment on Plaintiff's FMLA interference claim on the grounds that Plaintiff lacks evidence of prejudice and proof of a serious health condition.  ECF No. 45 at 13-15.  Plaintiff argues that she establishes prejudice and a serious health condition.  ECF No. 50 at 8-9.

The FMLA prohibits an employer from making an adverse employment action as a result of an employee taking FMLA leave.  29 U.S.C. § 2615(a)(1).

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT
DEFENDANTS' MOTION FOR LEAVE TO FILE DECLARATION ~ 23

This prohibition is designed to remove a potential obstacle to an employee taking FMLA leave, as "[e]mployees are, understandably, less likely to exercise their FMLA leave rights if they can expect to be fired or otherwise disciplined for doing so." *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1124 (9th Cir. 2001). Employers who violate this prohibition are liable for "interfering" with the exercise of FMLA rights within the meaning of § 2615(a)(1). *Id.* To establish a *prima facie* case of FMLA interference, an employee must establish that (1) she was eligible for FMLA protection, (2) the employer was covered by the FMLA, (3) she was entitled to leave under the FMLA, (4) she provided sufficient notice of her intent to take leave, and (5) the employer denied FMLA benefits to which she was entitled. *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1243 (9th Cir. 2014).

For purposes of this motion, Defendants do not dispute that Plaintiff was a FMLA-eligible employee, YSD is a FMLA-covered employer, or that Plaintiff provided sufficient notice to take leave. Defendants place two elements at issue: whether Plaintiff was entitled to leave under the FMLA and whether YSD denied Plaintiff's FMLA benefits to which she was entitled. ECF No. 45 at 13-15. The Court addresses each issue in turn.

//

//

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT DEFENDANTS' MOTION FOR LEAVE TO FILE DECLARATION ~ 24

1          a.   <u>FMLA Entitlement: Serious Health Condition</u>

2          The FMLA entitles an eligible employee to 12 workweeks of leave during

3    any 12-month period due to a serious health condition that renders the employee

4    unable to perform the functions of their job.  29 U.S.C. § 2612(a)(1)(D).  A serious

5    health condition is "an illness, injury, impairment, or physical or mental condition

6    that involves (A) inpatient care in a hospital, hospice, or residential medical care

7    facility; or (B) continuing treatment by a health care provider."  29 U.S.C.

8    § 2611(11).  Department of Labor regulations provide that "continuing treatment"

9    entails a "period of incapacity of more than three consecutive, full calendar days,

10   and any subsequent treatment or period of incapacity relating to the same

11   condition, that also involves" either (a) treatment two or more times by a health

12   care provider within thirty days of the first day of incapacity, unless extenuating

13   circumstances exist, or (b) treatment by a health care provider on at least one

14   occasion resulting in a regimen of continuing treatment under that provider's

15   supervision.  29 C.F.R. § 825.115(a)(1)-(2).

16         Here, Plaintiff alleges that she provided YSD with two doctors' notes on

17   March 26, 2018 that demonstrated Plaintiff had a serious health condition.  ECF

18   No. 52 at 29, ¶ 56.  On April 13, 2018, Plaintiff's clinical psychologist sent the

19   Certification of Health Care Provider for Employee's Serious Health Condition

20   that stated Plaintiff would be incapacitated from March 27, 2018 to July 13, 2018

1  due to anxiety, difficulties modulating effect, concentration, and daytime

2  drowsiness that would require continuing treatment once per week.  ECF No. 50 at

3  9.  Viewed in light most favorable to Plaintiff, these physician letters create a

4  genuine issue of material fact as to whether Plaintiff had a serious health condition

5  that made her unable to perform the functions of her job.  *See* 26 U.S.C.

6  § 2612(a)(1)(D).  Therefore, summary judgment on Defendants' claim that

7  Plaintiff did not have a serious health condition is inappropriate.

8        b.  <u>FMLA Interference</u>

9        "Employers have a duty to inform employees of their entitlements under the

10  FMLA."  *Olson v. United States by & through Dep't of Energy*, 980 F.3d 1334,

11  1338 (9th Cir. 2020) (citing *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1134-35 (9th

12  Cir. 2003)); *see also* 29 C.F.R. § 825.300(d)-(e).  The failure to provide notice

13  does not alone create a cause of action.  *Id.*  The FMLA "provides no relief unless

14  the employee has been prejudiced by the violation."  *Ragsdale v. Wolverine World*

15  *Wide, Inc.*, 535 U.S. 81, 89 (2002).  There is no prejudice where the employee does

16  not suffer harm and receives all leave requested from the employer.  *See Crawford*

17  *v. JP Morgan Chase NA*, 983 F. Supp. 2d 1264, 1271 (W.D. Wash. 2013).

18        Here, Plaintiff argues she was prejudiced: "Since YSD did not tell [Plaintiff]

19  when her accrued paid leave would end [Plaintiff] had to exhaust her paid leave

20  which, in turn, caused [Plaintiff] $30,600.00 because of the exhaustion of her own

accrued leave when she sought to take FMLA." ECF No. 50 at 8-9. YSD allows

sequential use of accrued and FMLA leave, but requires employees to first exhaust

accrued leave. ECF No. 52-12 at 2; ECF No. 55 at 2. On April 17, 2018, Plaintiff

emailed YSD and stated the hours of accrued leave she had but stated she was

unable to calculate when these accrued hours would expire. ECF No. 52-11 at 2-3.

That same day, YSD informed Plaintiff (1) that her medical leave commenced on

March 27, 2018, (2) that she had 55.75 days of sick leave, 27.5 days of vacation,

and 2 days of personal leave, and (3) that her leave balances would be exhausted

on July 25, 2018. ECF No. 56 at 5. Therefore, contrary to Plaintiff's assertion,

YSD provided Plaintiff notice for when her accrued leave would expire, accrued

leave of which was required to be used prior to the sequential use of FMLA leave.

*See* ECF No. 52-11 at 2 ("The FMLA Application identifies that the District

requires employees to first exhaust accrued leave prior to accessing FMLA); ECF

No. 52-12 at 2 ("I am aware that I must exhaust annual, sick and compensatory

leave before going on leave without pay for FMLA leave.").

    Notwithstanding any technical violations of the FMLA, Plaintiff cannot

show that she was prejudiced nor that Defendant YSD denied her any leave. It is

unclear how Plaintiff suffered a $30,600.00 loss of accrued leave when such leave

was required to be used before her FMLA leave. Taking the evidence in light most

favorable to Plaintiff, there is no genuine issue of material fact as to whether

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT
DEFENDANTS' MOTION FOR LEAVE TO FILE DECLARATION ~ 27

Plaintiff suffered prejudice – she did not.  Therefore, summary judgment on

Plaintiff's FMLA interference claim is appropriate.

### 2. *Retaliation*

Defendants move for summary judgment on Plaintiff's FMLA

discrimination/retaliation claim on the grounds that it should be analyzed as an

interference claim, Plaintiff did not engage in protected activity, and Plaintiff did

not suffer an adverse employment action.  ECF No. 45 at 15-18.  Plaintiff argues

she engaged in a protected activity by taking FMLA leave and can establish

causation and an adverse employment action.  ECF No. 50 at 10-13.

### a.  Interference v. Retaliation

The FMLA has anti-retaliation and anti-discrimination provisions that

prohibit "discriminat[ion] against any individual for opposing any practice made

unlawful by this subchapter" and prohibit discrimination against any individual for

instituting or participating in FMLA proceedings or inquiries, respectively.  29

U.S.C. § 2615(a)(2)-(b).  The anti-retaliation and anti-discrimination provisions do

not cover negative consequences imposed on an employee because she used

FMLA leave; such conduct is covered by the § 2615(a)(1) interference provision.

*See Bachelder*, 259 F.3d at 1124.  The claim for discrimination or retaliation is

triggered only when "an employee is punished for *opposing* unlawful practices by

the employer."  *Xin Liu*, 347 F.3d at 1136.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT
DEFENDANTS' MOTION FOR LEAVE TO FILE DECLARATION ~ 28

Defendants argue that Plaintiff's retaliation claim should be analyzed as an interference claim because "Plaintiff does not allege that Defendants discriminated against her because she opposed Defendants' unlawful violations of the FMLA or that she was fired for opposing Defendants' alleged violations of the FMLA." ECF No. 45 at 16.[3]  In response, Plaintiff argues that she opposed YSD under § 2615(a)(2) "by telling YSD that it was in violation of numerous FMLA regulations."  ECF No. 50 at 10.  To the extent that Plaintiff informed YSD about technical FMLA violations, Plaintiff raised opposition to YSD's practices.  *See, e.g.*, ECF No. 52-6.  As such, the claim is properly analyzed as a retaliation claim rather than an interference claim.

b.  Retaliation

Under § 2615(a)(2), it is "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."  29 U.S.C. § 2615(a)(2).  A claim for a violation under this provision is known as a discrimination or retaliation claim.  *Sanders v. City of Newport*, 657 F.3d 772, 777 (9th Cir. 2011).  While not expressly adopted

---

[3]    Defendants argue that the retaliation claim should be analyzed as an interference claim but proceed to analyze the claim under a retaliation framework. ECF No. 45 at 16-18.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT DEFENDANTS' MOTION FOR LEAVE TO FILE DECLARATION ~ 29

1    by the Ninth Circuit, *see Bachelder*, 259 F.3d at 1125, district courts within the

2    Ninth Circuit have applied the *McDonnell Douglas* framework for § 2615(a)(2)

3    claims. *Crawford v. JP Morgan Chase NA*, 983 F. Supp. 2d 1264, 1269 (W.D.

4    Wash. 2013). The parties apply the *McDonnell Douglas* framework. ECF No. 45

5    at 16; ECF No. 50 at 10-13.

6        To establish a *prima facie* case of retaliation, a plaintiff must show that (1)

7    she availed herself of a protected right under the FMLA; (2) she was adversely

8    affected by an employment decision; and (3) there is a causal connection between

9    the two actions." *Crawford*, 983 F. Supp. 2d at 1269. If a *prima facie* case is

10   established, the burden shifts to the employer to articulate a legitimate

11   nondiscriminatory reason for the adverse action. *Id.* If the employer satisfies that

12   standard, the burden shifts back to the plaintiff to show pretext. *Id.*

13       i.    Protected Right

14       To establish that Plaintiff exercised a protected FMLA right, Plaintiff argues

15   that taking FMLA is a protected right under 29 U.S.C. § 2615 (a)(1) and that she

16   told YSD that it violated numerous FMLA regulations, implicating 29 U.S.C.

17   § 2615(a)(2). ECF No. 50 at 10. Defendants argue that, as a manager, Plaintiff's

18   reports of YSD violations were not sufficiently clear and detailed for YSD to

19

20

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT
DEFENDANTS' MOTION FOR LEAVE TO FILE DECLARATION ~ 30

understand that Plaintiff was asserting a protected right. ECF No. 55 at 3.[4] After

Plaintiff filed for FMLA, Plaintiff's letter to YSD unambiguously opposed

Defendants' actions that allegedly violated Plaintiff's FMLA rights, including her

right to various FMLA notices, information, and time to return a health care

provider certification. *See* ECF No. 52-6 at 2-3. Therefore, the first *prima facie*

element is satisfied.

      ii.     Adverse Employment Action

To establish an adverse employment action, Plaintiff argues that YSD

instituted a *Loudermill* hearing and withheld retroactive wages. ECF No. 50 at 12-

13. An employment action is adverse if it is reasonably likely to deter employees

from engaging in protected activity. *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th

Cir. 2000).

---

[4]     Defendant relies on the so-called "manager rule" or "fair notice" rule under

the Fair Labor Standards Act. *Rosenfield v. GlobalTranz Enterprises, Inc.*, 811

F.3d 282, 284 (9th Cir. 2015). In the event this rule applies to the FMLA, Plaintiff

opposed technical violations not as a manager with policy concerns but as an

employee seeking personal FMLA leave in a manner sufficiently clear and detailed

for YSD to understand she was doing so. *Id.* at 286.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT
DEFENDANTS' MOTION FOR LEAVE TO FILE DECLARATION ~ 31

As to the *Loudermill* notice, Plaintiff relies on *Poland v. Chertoff*, 494 F.3d 1174, 1180 (9th Cir. 2007) to state that initiating an administrative inquiry constitutes an adverse employment action.  ECF No. 50 at 12.  The Ninth Circuit recognizes that administrative inquiries in the form of an investigation may constitute an adverse employment action.  *Lakeside-Scott v. Multnomah Cty.*, 556 F.3d 797, 803 (9th Cir. 2009) ("[W]e have suggested an investigation of an employee [as in *Poland*] might so qualify.").  Here, the mere issuance of a *Loudermill* notice does not rise to the level of such an administrative inquiry.  A *Loudermill* notice is a required component of the pre-termination process for the employee's benefit; the notice helps ensure that the employee's property and liberty interests are adequately protected.  *Matthews v. Harney Cnty. Sch. Dist. No. 4*, 819 F.2d 889, 892 (9th Cir. 1987).  No *Loudermill* hearing occurred, and as discussed *infra*, no *Loudermill* hearing was required because Plaintiff is not a certificated administrator.  Therefore, the *Loudermill* notice itself does not constitute an adverse employment action.

As to the withholding of wages, Plaintiff alleges that YSD withheld retroactive wages from a pay increase on July 1, 2017 for over two months but provided members of the Cabinet the same wages on March 30, 2018.  ECF No. 50 at 13; ECF No. 46-1 at 14, ¶ 33.  The Court finds that withholding wages for over two months when paid out to other employees constitutes an adverse employment

1    action as such conduct is reasonably likely to deter someone from engaging in

2    protected activity. *See, e.g.*, *United States v. Hawaii*, No. CV 14-00214 JMS-RLP,

3    2015 WL 5063956, at *14 (D. Haw. Aug. 26, 2015) ("The court has no difficulty

4    finding that withholding an employee's wages for weeks and/or months would

5    reasonably likely deter someone from engaging in protected activity."). Therefore,

6    the second *prima facie* element is satisfied.

7        iii.    Causation

8        To establish causation, Plaintiff first argues that YSD instituted the

9    *Loudermill* hearing in April 2018 while Plaintiff was on leave for conduct that

10   occurred in August 2017. ECF No. 50 at 10. Second, Plaintiff argues that YSD

11   gave conflicting reason for "firing" Plaintiff. ECF No. 50 at 11. Third, Plaintiff

12   asserts the retroactive wages were paid to other members of the Cabinet but not

13   Plaintiff within four days of the FMLA request. ECF No. 50 at 13.

14       Here, Plaintiff's protected activity under the anti-retaliation provision

15   occurred on April 4, 2018 when she sent the letter opposing YSD's technical

16   FMLA violations. ECF No. 52-6 at 2. The adverse employment action occurred

17   before that, as Plaintiff was not paid retroactive wages that were given to other

18   employees on March 30, 2018. ECF No. 46-1 at 14, ¶ 33. Plaintiff's argument

19   that YSD gave conflicting reasons for wanting to terminate Plaintiff, even if

20   accepted as true, is not sufficient to establish causation as the *Loudermill* notice did

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT
DEFENDANTS' MOTION FOR LEAVE TO FILE DECLARATION ~ 33

not constitute an adverse employment action. Therefore, as Plaintiff cannot

establish causation, she cannot make a *prima facie* case for retaliation.

Where Plaintiff cannot demonstrate prejudice on her interference claim nor

can she set out a *prima facie* case for retaliation, summary judgment is appropriate

on Plaintiff's FMLA claims.

## G.  Washington State Wage Rebate Act

Defendants move for summary judgment on Plaintiff's claim under the

Washington Wage Rebate Act ("WRA") on the grounds that Plaintiff is not

entitled to double damages, interest, or attorney fees and Plaintiff lacks evidence of

an intent by the District to pay Plaintiff less than what she was entitled to receive.

ECF No. 45 at 18-19.  Plaintiff argues that there are issues of fact as to whether

Defendants acted willfully that a jury should decide.  ECF No. 50 at 13-14.

The Washington Legislature passed the WRA in 1939 "to protect

the *wages* of an employee against any diminution or deduction therefrom

by rebating, underpayment, or false showing of overpayment of any part of

such wages."  *LaCoursiere v. Camwest Dev., Inc.*, 181 Wash. 2d 734, 741 (2014)

(quoting *Schilling v. Radio Holdings, Inc.,* 136 Wash. 2d 152 (1998)).  To this end,

RCW 49.52.050 provides:

//

//

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT
DEFENDANTS' MOTION FOR LEAVE TO FILE DECLARATION ~ 34

> Any employer or officer, vice principal or agent of any employer, whether said employer be in private business or an elected public official, who . . . (2) Wilfully and with intent to deprive the employee of any part of his or her wages, shall pay any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract[.]

Such actors are also subject to civil liability "for twice the amount of the wages unlawfully rebated or withheld by way of exemplary damages, together with costs of suit and a reasonable sum for attorney's fees." RCW 49.52.070. "Under RCW 49.52.050(2), a nonpayment of wages is willful when it is not a matter of mere carelessness, but the result of knowing and intentional action." *Ebling v. Gove's Cove, Inc.*, 34 Wash. App. 495, 500 (1983) (citation omitted).

The actor's "genuine belief that he is not obligated to pay certain wages precludes the withholding of wages from falling within the operation of RCW 49.52.050(2) and 49.52.070." *Id.* (citation omitted). In other words, "a willful withholding [is] 'the result of knowing and intentional action and not the result of a bona fide dispute as to the obligation of payment.'" *Champagne v. Thurston Cty.*, 163 Wash. 2d 69, 81 (2008) (internal quotation marks omitted) (quoting *Wingert v. Yellow Freight Sys., Inc.*, 146 Wash. 2d 841, 849 (2002)). A bona fide dispute is a "'fairly debatable' dispute over whether an employment relationship exists, or whether all or a portion of the wages must be paid." *Id.* (quoting *Schilling v. Radio Holdings, Inc.,* 136 Wash. 2d 152, 161-62 (1998)). Determining willfulness is generally a question of fact reviewed under the substantial evidence standard. *Id.*

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT DEFENDANTS' MOTION FOR LEAVE TO FILE DECLARATION ~ 35

However, when no dispute exists as to the material facts, the issue of willfulness may be disposed of summarily. *Id.* at 81-82.

Delayed payment of wages owed to an employee may provide a cause of action under RCW 49.52.050(2). *Champagne*, 163 Wash. 2d at 89. In *Champagne*, the county employer paid employees additional pay at the end of the month subsequent to the month in which the pay was earned. *Id.* at 82. The Washington Supreme Court found that this practice violated former Washington Administrative Code 296-128-035, which mandates employers pay employees at certain regular pay intervals. *Id.* at 82. However, the court also found that the practice complied with the governing collective bargaining agreement and that there were no allegations of bad faith or animus motivated by the delayed payment of additional pay. *Id.* Finding a lack of substantial evidence of willful withholding, the court stated that the issue was "more likely a bona fide dispute over whether the wages were due by a certain time." *Id.*

The parties do not dispute that Plaintiff was owed her retroactive pay increase wages. ECF No. 45 at 19; ECF No. 50 at 13. Plaintiff claims she was entitled to the retroactive pay under RCW 28A.405.200, RCW 28A.400.200, and RCW 28A.400.315. ECF No. 26 at 36, ¶ 125. However, none of these statutes required that the retroactive wages to be paid out at a certain time. *See id.* Defendant YSD and Plaintiff were in ongoing settlement negotiations when other

1  superintendents received the retroactive pay wages in March 2018. ECF No. 45 at

2  19. Plaintiff received the full retroactive pay wages in the amount of $3,228.12 in

3  June 2018 after settlement negotiations broke down. *Id.* The Court finds that there

4  was no statute, ordinance, or contract that mandated Defendants issue her

5  retroactive pay in March 2018 rather than June 2018. *See* RCW 49.52.050(2).

6  Like *Champagne*, this dispute is more likely a bona fide dispute over whether

7  Plaintiff's retroactive wages were due by a certain time. Therefore, summary

8  judgment on this claim is appropriate.

9  **H. Equal Pay Act**

10  Defendants move for summary judgment on Plaintiff's Equal Pay Act

11  ("EPA") claims for retaliation and discrimination. ECF No. 45 at 19-25. Plaintiff

12  argues that there are issues of fact regarding Plaintiff's EPA claims that a jury

13  should decide. ECF No. 50 at 15-20.

14  The EPA is an amendment to the Fair Labor Standards Act ("FLSA") that

15  was created to ensure that "equal work will be rewarded by equal wages." *Rizo v.*

16  *Yovino*, 950 F.3d 1217, 1222 (9th Cir.), *cert. denied*, 141 S. Ct. 189 (2020)

17  (internal quotation and citation omitted). The EPA, by way of the FLSA, prohibits

18  discrimination and retaliation. *See* 29 U.S.C. § 215(a)(2)-(3).

19  //

20  //

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT
DEFENDANTS' MOTION FOR LEAVE TO FILE DECLARATION ~ 37

1    *1. Retaliation*

2    Defendants move for summary judgment on Plaintiff's EPA retaliation claim

3    on the grounds that Plaintiff has not alleged that she asserted any protected EPA

4    right, Plaintiff's role as a manager did not put YSD on notice that Plaintiff was

5    asserting a protected right, and Plaintiff did not suffer any adverse employment

6    action. ECF No. 45 at 19-22. Plaintiff argues it should be for a jury to decide

7    whether her complaint to Defendant Dr. Irion regarding the "Jack Factors" was

8    sufficient to put him on notice that Plaintiff was complaining of gender pay

9    disparities as opposed to carrying out her duties. ECF No. 50 at 15-16.

10    The FLSA prohibits retaliation by an employer against an employee

11    "because such employee has filed any complaint … under or related to this

12    chapter." 29 U.S.C. § 215(a)(3). To establish a *prima facie* case of retaliation, a

13    plaintiff must show: (a) the defendant was aware of the plaintiff's participation in a

14    protected activity, (b) an adverse employment action was taken against the

15    plaintiff, and (c) the protected activity was a substantial motivating factor in an

16    adverse employment action against the plaintiff. *Bowen v. M. Cataran, Inc.*, 142

17    F. Supp. 3d 1007, 1021 (E.D. Cal. 2015) (citing *Lambert v. Ackerley*, 180 F.3d

18    997, 1007 (9th Cir. 1999)). The FLSA is a remedial statute that should be

19    interpreted broadly. *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S.

20    1, 13 (2011).

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT
DEFENDANTS' MOTION FOR LEAVE TO FILE DECLARATION ~ 38

1    a.  <u>Notice of Protected Activity</u>

2    As relevant here, oral complaints are sufficient to invoke the antiretaliation

3    provision of the FLSA.  *Kasten*, 563 U.S. at 17.  However, the FLSA also "seeks to

4    establish an enforcement system that is fair to employers."  *Id.* at 13.  As such, an

5    employer "must have fair notice that an employee is making a complaint that could

6    subject the employer to a later claim of retaliation."  *Id.*  The Ninth Circuit has

7    recognized that the "fair notice" rule is likely consistent with the "manager rule"

8    under the FLSA.  *Rosenfield v. GlobalTranz Enterprises, Inc.*, 811 F.3d 282, 286

9    (9th Cir. 2015).  Ultimately, the analysis of whether an employer had notice that an

10   employee was making a complaint that is protected activity under the EPA/FLSA

11   is informed by:

12        The employee's job title and responsibilities – in particular, whether
          he or she is a manager – form a part of that "context."  Generally
13        speaking, managers are in a different position vis-a-vis the employer
          than are other employees because (as relevant here) their employer
14        expects them to voice work-related concerns and to suggest changes
          in policy to their superiors.  That may be particularly true with respect
15        to upper-level managers who are responsible for ensuring compliance
          with the FLSA.

16
17        If an entry-level employee reported that someone is underpaid in
          violation of the FLSA and requested that the employee be
18        compensated in compliance with the Act, a reasonable employer
          almost certainly would understand that reports as a "complaint"
19        (depending, of course, on all of the circumstances).  But if the
          identical report were made by a manager tasked with ensuring the
20        company's compliance with the FLSA, a reasonable employer almost
          certainly would *not* understand that report as a "complaint" (again,
          depending on all the circumstances).  Rather, the employer naturally

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT
DEFENDANTS' MOTION FOR LEAVE TO FILE DECLARATION ~ 39

1    would understand the manager's report as carrying out his or her

2    duties.  In short, when determining whether an employee has "filed

3    any complaint," the employee's role as a manager often is an
     important contextual element.

4    *Id.* at 286.  In *Rosenfield*, the plaintiff employee served as either the Manager or

5    Director of Human Resources but was not responsible for FLSA compliance.  *Id.* at

6    288.  Plaintiff raised concerns to her boss who was in charge of FLSA compliance,

7    complained orally on at least eight occasions to management, provided specific

8    assertions and copies of the statute to management, and raised the FLSA violations

9    in at least 27 weekly and monthly reports to her supervisors.  *Id.* The Ninth Circuit

10   found that, despite the plaintiff's managerial position, "a reasonable jury could find

11   that Plaintiff's advocacy reached the requisite degree of formality to constitute

12   protected activity."  *Id.*

13        Here, construing the evidence in light most favorable to Plaintiff, a jury

14   could not reasonably conclude that Plaintiff provided fair notice of her EPA

15   complaint to her employer.  Plaintiff does not dispute that she was a manager

16   "charged with varied Human Resources matters."  ECF No. 50 at 15.  As the

17   Superintendent of Human Resources, Plaintiff's job description demonstrates she

18   was tasked with reviewing and interpreting applicable state and federal

19   employment laws and regulations and monitoring such compliance as well as

20   coordinating, establishing, and maintaining sound salary and wage administration

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT
DEFENDANTS' MOTION FOR LEAVE TO FILE DECLARATION ~ 40

practices.  ECF No. 46-1 at 25-26.  Additionally, YSD used Plaintiff for legal opinions, guidance, and interpretation on federal laws as she is a licensed attorney. *See* ECF No. 51 at 11, ¶¶ 29-32.

In the context of these duties, Plaintiff alleges she made only one statement to Dr. Irion to the effect of: "The Jack Factors are creating a spiral that is causing the men to be paid more than women.  We are going to keep paying men more than women if we keep using these factors.  This is gender-based pay discrimination is going to cause the District liability.  And I will not support it."  ECF No. 50 at 15 (citing ECF No. 51 at 30, ¶ 73(e)).[5]  In light of Plaintiff's top managerial position and job duties that included legal advice, the employer would not have understood this single statement, if it had occurred, to be an assertion of rights protected by the

---

[5]     Plaintiff's brief asserts that she made the same statement to Ms. Mahre. ECF No. 51 at 30.  Plaintiff's Statement of Facts supports that the statement was made to Dr. Irion, which Defendants dispute.  ECF No. 51 at 30, ¶ 73(e); ECF No. 57 at 8, ¶ 73.  Plaintiff otherwise generally asserts that "she had expressed [her] concerns about the Jack Factors to others, like Ms. Mahre."  ECF No. 51 at 30, ¶ 73(d).  Even if these unspecified conversations occurred, Plaintiff has not shown that she made such reports in a manner and frequency that rises to the requisite degree of formality to constitute protected activity.  *Rosenfield*, 811 F.3d at 288.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT
DEFENDANTS' MOTION FOR LEAVE TO FILE DECLARATION ~ 41

1    FLSA.  *See Rosenfield*, 811 F.3d at 288.  Therefore, Defendants were not on notice

2    of Plaintiff's protected activity.  Summary judgment on this claim is appropriate.

3         *2.  Discrimination*

4         Defendants move for summary judgment on Plaintiff's EPA discrimination

5    claim for lower wages on the grounds that Plaintiff did not perform substantially

6    equal work and that Plaintiff lacks evidence that the pay differential was made on

7    the basis of sex.  ECF No. 45 at 23-25.  Plaintiff argues that she was paid different

8    wages for substantially equal work compared to another superintendent position.

9    ECF No. 50 at 17-20.

10         Regarding sex discrimination, the EPA provides:

11         No employer having employees subject to any provisions of this
      section shall discriminate, within any establishment in which such
12         employees are employed, between employees on the basis of sex by
      paying wages to employees in such establishment at a rate less than
13         the rate at which he pays wages to employees of the opposite sex in
      such establishment for equal work on jobs the performance of which
14         requires equal skill, effort, and responsibility, and which are
      performed under similar working conditions. . . .

15

16    29 U.S.C. § 206(d)(1).  The plaintiff bears the burden of establishing a *prima facie*

17    case of discrimination that employees of different sex were paid different wages

18    for equal work.  *Stanley v. Univ. of S. Cal.*, 178 F.3d 1069, 1073-74 (9th Cir.

19    1999).  If the plaintiff can establish a *prima facie* case, the defendant can show

20    "such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT
DEFENDANTS' MOTION FOR LEAVE TO FILE DECLARATION ~ 42

system which measures earnings by quantity or quality of production; or (iv) a

differential based on any other factor other than sex" to operate as an affirmative

defense.  29 U.S.C. § 206(d)(1); *Rizo v. Yovino*, 950 F.3d at 1222.  The inquiry

ends there: Plaintiff is not required to show pretext because EPA cases do not

follow the burden-shifting framework set out in *McDonnell Douglas*.  *Rizo*, 950

F.3d at 1223.

### a.  *Prima Facie* Case

The plaintiff must demonstrate that the compared jobs – not the individuals

– are "substantially equal."  *Stanley*, 178 F.3d at 1074.  Under the "substantially

equal" analysis, the court looks to: (1) whether the jobs share a common core of

tasks; and (2) whether the additional tasks make the jobs substantially different.

*Id.*  "[T]he jobs need not be identical, but must require similar skills, effort and

responsibility performed under similar conditions; it is actual job performance

requirements, rather than job classifications or titles, that is determinative."

*E.E.O.C. v. Maricopa Cty. Cmty. Coll. Dist.*, 736 F.2d 510, 513 (9th Cir. 1984).

On summary judgment, a reasonable jury could find that two positions share a

common core of tasks and do substantially equal work if the evidence is "not so

one-sided as to mandate [a] conclusion as a matter of law."  *Freyd v. Univ. of

Oregon*, No. 19-35428, 2021 WL 958217, at *7 (9th Cir. Mar. 15, 2021).

1    Here, there is no dispute that Mr. Izutsu as Associate Superintendent of

2 Financial Services was paid more than Plaintiff as Assistant Superintendent of

3 Human Resources.  ECF No. 50 at 17.  Defendants assert that there are "substantial

4 differences between Mr. Izutsu's job and Plaintiff's jobs [that] are apparent by

5 reviewing the job descriptions for the two jobs."  ECF No. 45 at 24.  On the other

6 hand, Plaintiff points to several similarities in the job positions.  ECF No. 50 at 18-

7 19.  The positions in the Superintendent Group were "all connected" so that the

8 superintendents "all played a role in supporting whatever it is [YSD is] working

9 on."  ECF No. 51 at 8, ¶ 21.  Specifically, Mr. Izutsu and Plaintiff's positions

10 aligned in terms of both: (a) reporting to Dr. Irion, (b) working as part of the

11 Superintendent Group, (c) complying with the terms and conditions of the

12 District's Management Team Handbook, (d) being subject to the same Collective

13 Bargaining Agreement, (e) maintaining offices at YSD's Central Services building,

14 (f) leading various bargaining teams, (g) working similar hours, (h) playing key

15 roles in YSD's budgeting and staffing, (i) signing warrants and contracts on YSD's

16 behalf, and (j) being required to attend the same Board Meetings, Management

17 Team Meetings, and Cabinet Meetings.  ECF No. 50 at 18.  Mr. Izutsu and

18 Plaintiff also shared the responsibility of facilitating the transition of students from

19 eighth to ninth grade, running start matters, student transfer matters, approving

20 overtime, addressing workplace accommodation issues, and addressing risk

1    management/safety matters.  *Id.*  While the job descriptions point to differences in

2    job duties between the Financial and Human Resources divisions, Plaintiff states

3    she had the same 6 out of 11 Major Responsibilities in Mr. Izutsu's position and

4    conducted parallel work as to 2 other Major Responsibilities.  *Id.* at 18-19.  Finally,

5    Plaintiff asserts that she had more job duties than Mr. Izutsu in term of advising

6    YSD on compliance with various federal laws in which YSD "could access her for

7    legal opinions, guidance, [and] interpretation" even though Plaintiff was not the

8    "attorney by title in our district."  *Id.*  at 19 (citing ECF No. 51 at 11, ¶¶ 29-30).

9           Based on the similarities and overlap in duties, Mr. Izutsu and Plaintiff's

10   positions appear to share a common core of tasks and any additional tasks do not

11   make the positions substantially different.  In any event, the Court finds that the

12   comparison does not result in a conclusion so "one-sided" as to determine that the

13   jobs are substantially different as a matter of law.  *See Freyd*, 2021 WL 958217, at

14   *7.  Therefore, Plaintiff has established a *prima facie* case of EPA discrimination.

15          a.   Affirmative Defense

16          Plaintiff asserts that Defendants waived any affirmative defense by not

17   pleading such in the answer.  ECF No. 50 at 19.  However, affirmative defenses are

18   not waived if the plaintiff is not prejudiced where such a defense is raised for the

19   first time on summary judgment.  *See Camarillo v. McCarthy*, 998 F.2d 638, 639

20   (9th Cir. 1993).  Plaintiff also argues that YSD "could not substantively explain the

pay differences between [Plaintiff] and Mr. Izutsu nor did YSD conduct any

assessment to determine whether gender influenced such pay decisions" and that

Plaintiff's past pay does not satisfy the "other factor other than sex" criteria.  ECF

No. 50 at 19-20.

Notably, Plaintiff ignores YSD's apparent reason for paying Mr. Izutsu more

than Plaintiff: Mr. Izutsu had worked as a superintendent with YSD for 15 years

before Plaintiff was hired and had attained Step 6 of Associate Superintendent.

ECF No. 45 at 23.  This significant professional experience as a superintendent that

Plaintiff did not have – this was her first position as a superintendent – is the sort

of pay differential that is based on a factor other than sex.  *See Stanley*, 178 F.3d

1069 (holding that employers "may reward professional experience without

violating the EPA).  It is not clear how Plaintiff is prejudiced by this affirmative

defense of experience to preclude Defendants from raising such on summary

judgment.  Therefore, summary judgment on this claim is appropriate

## I.    Washington Law Against Discrimination

Defendants move for summary judgment on Plaintiff's Washington Law

Against Discrimination ("WLAD") claim for retaliation on the grounds that

Plaintiff cannot meet her burden of proof as a matter of law on the grounds that

"no reasonable jury could find that Defendants retaliated against her by placing her

on administrative leave and not renewing her contract for the next school year

because she allegedly 'opposed illegal activities' between March 13, 2017 and November 6, 2017."  ECF No. 45 at 25-26.  Plaintiff argues that issues of fact exist regarding Plaintiff's WLAD retaliation claim because Defendants' reasons for placing Plaintiff on administrative leave is "non-sensical," Defendants' justification for "ending [Plaintiff's] career with YSD evolved over time," YSD treated Plaintiff different than other similarly situated workers, YSD did not engage in any progressive discipline with Plaintiff, and the proximity in time from one of Plaintiff's oppositional activities and administrative leave is probative of causation.  ECF No. 50 at 20-23.

The WLAD prohibits discrimination against any individual on the basic protected characteristics such as sex, race, national origin, and physical disability.  RCW 49.60.010.  Under the WLAD, "[i]t is an unfair practice for any employer … to discharge, expel, or otherwise discriminate against any person because he or she has opposed any practices forbidden by this chapter."  RCW 49.60.210(1).  The provisions of the WLAD are to be construed liberally.  RCW 49.60.020.

A WLAD retaliation claim is analyzed under the *McDonnell Douglas* burden-shifting framework.  *Cornwell v. Microsoft Corp.*, 192 Wash. 2d 403, 411 (2018) (citing *Mikkelsen v. Pub. Util. Dist. No. 1 of Kittitas Cty.*, 189 Wash. 2d 516, 527 (2017)).  First, the plaintiff must make a *prima facie* case for her claim, here retaliation.  *Mikkelsen*, 189 Wash. 2d at 527.  If the plaintiff makes a *prima*

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT
DEFENDANTS' MOTION FOR LEAVE TO FILE DECLARATION ~ 47

*facie* case, the burden shifts to the defendant who must "articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Id.* (internal quotation and citation omitted). If the defendant meets this burden, the burden shifts back to the plaintiff to produce sufficient evidence that the defendant's reason was pretext. *Id.*

    1.  *Prima Facie Case*

    To establish a *prima facie* case for WLAD retaliation, a plaintiff must show "(1) the employee took a statutorily protected action, (2) the employee suffered an adverse employment action, and (3) a causal link between the employee's protected activity and the adverse employment action." *Cornwell*, 192 Wash. 2d at 411.

    To establish protected activity, Plaintiff asserts she engaged in protected activity by opposing "numerous examples of gender, race, religious, and disability discrimination" between March 13, 2017 and November 6, 2017. ECF No. 50 at 20; *see also* ECF No. 45 at 25. Defendants do not challenge that Plaintiff engaged in protected activity but generally object to the alleged oppositional activity on grounds of relevancy and hearsay.[6] *See* ECF No. 45 at 25; ECF No. 55 at 6.

    ───────────────

[6]    Admissibility of evidence on summary judgment is focused on content, not form. *Fraser v. Goodale*, 342 F.3d 1032 (9th Cir. 2003). While Defendants object

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT
DEFENDANTS' MOTION FOR LEAVE TO FILE DECLARATION ~ 48

Defendants admit that Plaintiff raised workplace concerns and while generally denying some allegations occurred, acknowledge there "may have been" other instances where Plaintiff told Dr. Irion that YSD was violating the law.  ECF No. 57 at 6, ¶¶ 43-44; ECF No. 51 at 42, ¶ 91.  Viewing the evidence in light most favorable to Plaintiff, Plaintiff opposed employment practices forbidden by antidiscrimination law or practices that she reasonably believed to be discriminatory by reporting instances and opposition to various situations at YSD involving staff and student gender, religion, national origin, and physical disabilities.  *Alonso v. Qwest Commc'ns Co., LLC*, 178 Wash. App. 734, 746 (2013).  Therefore, while Defendants can argue that any opposition occurred in the scope of her job responsibilities, for purpose of Defendant's summary judgment motion, Plaintiff has established the first element of her *prima facie* WLAD retaliation claim.

To establish an adverse employment action, "[a]n adverse employment action involves a change in employment conditions that is more than an inconvenience or alteration of one's job responsibilities, such as reducing an employee's workload and pay." *Alonso v. Qwest Comm's Co., LLC*, 178 Wash.

---

on hearsay grounds, Plaintiff is not precluded from presenting her oppositional activity at trial in other forms. *See, e.g.*, ECF No. 51 at 16, ¶¶ 45-66, 80.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT DEFENDANTS' MOTION FOR LEAVE TO FILE DECLARATION ~ 49

App. 734, 746 (2013).  Whether an action "is materially adverse depends upon the circumstances of the particular case, and 'should be judged from the perspective of a reasonable person in the plaintiff's position.'"  *Tyner v. State*, 137 Wash. App. 545, 565 (2007).  It is undisputed that Plaintiff was placed on administrative leave for the majority and remainder of the school year and was paid in full under the contract.  Viewing the evidence in light most favorable to Plaintiff, a reasonable jury could conclude that Plaintiff suffered an adverse employment action in light of the circumstances in which she was placed on administrative leave for the majority of school year and was never able to return to work.  *See Waite v. Gonzaga Univ.*, No. 2:17-CV-00416-SAB, 2019 WL 544947, at * 5 (E.D. Wash. Feb. 11, 2019) (citing cases that recognize administrative leave may constitute retaliatory conduct).  Therefore, for purpose of Defendant's summary judgment motion, Plaintiff has established the second element of her *prima facie* WLAD retaliation claim.

To establish causation, a plaintiff must merely show that the retaliation was a "substantial factor" in the adverse employment action.  *Allison v. Hous. Auth.*, 118 Wash. 2d 79, 81 (1991).  Plaintiff provides several arguments to establish causation: Defendants' reasons for placing Plaintiff on administrative leave is "non-sensical," Defendants' justification for "ending [Plaintiff's] career with YSD evolved over time," YSD treated Plaintiff different than other similarly situated

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT
DEFENDANTS' MOTION FOR LEAVE TO FILE DECLARATION ~ 50

workers, YSD did not engage in any progressive discipline with Plaintiff, and the proximity in time from one of Plaintiff's oppositional activities and administrative leave is probative of causation.  ECF No. 50 at 20-23.  Viewing the evidence in light most favorable to Plaintiff, Plaintiff has shown that Plaintiff's oppositional activities were a "substantial factor" in being placed on administrative leave.  First, Plaintiff has demonstrated temporal proximity regarding at least one of Plaintiff's oppositional activity: her report regarding the handling of an employee's accommodations due to physical disability occurred six days prior to being placed on administrative leave.[7]  ECF No. 51 at 34, ¶ 80(f); *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987).  Second, Plaintiff has demonstrated that she was treated different to similarly situated workers, i.e., YSD charged other employees with insubordination but did not terminate or otherwise discipline the employees.  ECF No. 50 at 22.[8]  Based on the timing, different treatment, and the undisputed

---

[7]    While Defendants deny Plaintiff's factual assertion, *see* ECF No. 57 at 10, ¶ 80, the record demonstrates that Dr. Irion and Ms. Mahre admitted that there were conversations regarding the same employee's physical accommodations.  *See* ECF No. 53-2 at 45; ECF No. 53-4 at 96.

[8]    It is unclear if any of these other employees were ever placed on administrative leave.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT
DEFENDANTS' MOTION FOR LEAVE TO FILE DECLARATION ~ 51

1    record that Dr. Irion was aware of at least some of Plaintiff's oppositional activity

2    prior to the adverse employment action, there is more than sufficient evidence to

3    demonstrate causation for purposes of summary judgment.  *Cornwell v. Microsoft*

4    *Corp.*, 192 Wash. 2d 403, 412-413 (2018).  Therefore, viewing the evidence in

5    light most favorable to Plaintiff, Plaintiff has made out a *prima facie* case for

6    WLAD retaliation.

7         *2.  Legitimate Nondiscriminatory Reason*

8         Defendants claim that the legitimate, nondiscriminatory reason for placing

9    Plaintiff on paid administrative leave was due to Plaintiff's "insubordination in

10   refusing to provide a straight answer to Dr. Irion's question about whether a

11   procedure the District was using was legal after she previously reported – after

12   conferring with the District's legal counsel – that the procedure was legal."  ECF

13   No. 55 at 6.  Insubordination is a legitimate nondiscriminatory reason for placing

14   an employee on administrative leave.  *Mikkelsen v. Pub. Util. Dist. No. 1 of Kittitas*

15   *Cty.*, 189 Wash. 2d 516, 533, 34 (2017).

16        *3.  Pretext*

17        Once the defendant meets the burden to show a legitimate nondiscriminatory

18   reason, the plaintiff must "produce sufficient evidence showing that the

19   defendant's alleged nondiscriminatory reason for the adverse employment action

20   was a pretext."  *Mikkelsen*, 189 Wash. 2d at 534.  Here, viewing the evidence in

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT
DEFENDANTS' MOTION FOR LEAVE TO FILE DECLARATION ~ 52

1  light most favorable to Plaintiff, a reasonable jury could conclude that Defendants'

2  alleged varying reasons for placing Plaintiff on administrative leave including that

3  she would not provide legal advice even though she was not general counsel to

4  YSD, coupled with the lesser disciplinary treatment of employees charged with

5  insubordination and timing from her last oppositional activity, there are genuine

6  issues of material fact as to whether Plaintiff was terminated in retaliation for her

7  continued opposition to YSD's perceived unlawful discriminatory activity.

8  Therefore, summary judgment is not appropriate on this claim.

9  **J.  Discharge in Violation of Public Policy**

10      Defendants move for summary judgment on Plaintiff's Washington

11  Discharge in Violation of Public Policy ("WDVPP") claim on the grounds that

12  Plaintiff was not discharged from employment when she was placed on

13  administrative leave and that Plaintiff cannot establish causation by temporal

14  proximity.  ECF No. 45 at 34-37.  Plaintiff argues that she was discharged from

15  employment after Defendants' failed to offer Plaintiff continued employment after

16  her contract expired, public policy concerns are implicated where Plaintiff opposed

17  conduct that is prohibited by statute, and that the temporal proximity of events is

18  sufficient to establish causation.  ECF No. 50 at 31-33.

19      The tort of WDVPP is narrowly construed and is generally applied to only

20  four scenarios: "(1) where employees are fired for refusing to commit an illegal

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT
DEFENDANTS' MOTION FOR LEAVE TO FILE DECLARATION ~ 53

act; (2) where employees are fired for performing a public duty or obligation, such as serving jury duty; (3) where employees are fired for exercising a legal right or privilege, such as filing workers' compensation claims; and (4) where employees are fired in retaliation for reporting employer misconduct, i.e., whistleblowing." *Rose v. Anderson Hay and Grain Co.*, 184 Wash. 2d 268, 276 (2015).  When a wrongful discharge claim does not clearly fit into one of these categories, the court must instead consider the following "Perritt framework" to determine whether the claimant was wrongfully discharged in violation of public policy: (1) the existence of a clear public policy; (2) that discouraging the conduct in which the plaintiff engaged would jeopardize the public policy; (3) that the public policy-linked conduct caused the dismissal; and (4) that the defendant has not offered an overriding justification for the dismissal of the plaintiff.  *Gardner v. Loomis Armored Inc.*, 128 Wash. 2d 931, 941 (1996).  Here, the four main categories do not apply because Plaintiff alleges she was discharged after she was placed on paid administrative leave and then her contract was not renewed.  Thus, the Perritt framework applies.

Defendants now move for summary judgment on the grounds that Plaintiff was never discharged from her position.  ECF No. 45 at 36.  Whether an employee was discharged is a question of fact.  *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 971 (9th Cir. 2002) (genuine issues of fact, including whether Plaintiff

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT
DEFENDANTS' MOTION FOR LEAVE TO FILE DECLARATION ~ 54

1    was discharged or resigned, precluded summary judgment on WDVPP claim).  The

2    Court addressed Plaintiff's WDVPP claim when Plaintiff sought to certify this

3    issue to the Washington State Supreme Court.  ECF No. 44.  In that Order, the

4    Court found that "[u]nder present Washington law, an employee is not discharged

5    where she continues to receive a salary and benefits on a one-year contract that is

6    subsequently not renewed."  *Id.* at 44.  The tort of wrongful discharge in violation

7    of public policy only applies when an employee has been discharged.  *Roberts v.*

8    *Dudley*, 140 Wash. 2d 58, 76 (2000).  Placing an individual on paid administrative

9    leave until the employment contract expires and is not renewed does not constitute

10    a discharge.  *See Korslund v. Dyncorp. Tri-Cities Servs., Inc.*, 121 Wash. App. 295,

11    316 (2004), *aff'd,* 156 Wash. 2d 168, 180 (2005) (finding no discharge where

12    employee did not permanently leave her position because she continued to receive

13    a salary and benefits); *see also Davis v. Tacoma Sch. Dist.*, 188 Wash. App. 1043

14    (2015) (discussing difference between discharge and nonrenewal of school district

15    employees).

16       "[W]here the employee continues to receive employment benefits and is still

17    considered to be an active employee, or where his or her ability to return to work is

18    protected in some other way, that employee has not been constructively

19    discharged."  *Korslund*, 156 Wash. 2d 168, 180 (2005), *overruled on other*

20    *grounds by Rose v. Anderson Hay & Grain Co.*, 184 Wash. 2d 268 (2015).  Under

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT
DEFENDANTS' MOTION FOR LEAVE TO FILE DECLARATION ~ 55

1    this standard, "the focus is on whether the employee *permanently* left the job, not

2    on whether he or she technically resigned."  *Korslund v. Dyncorp Tri-Cities Servs.,*

3    *Inc.*, 121 Wash. App. 295, 315 (2004).  This rule is consistent with the Washington

4    Supreme Court's statement that "[s]ubjecting each disciplinary decision of an

5    employer to the scrutiny of the judiciary would not strike the proper balance

6    between the employer's right to run his business as he sees fit and the employee's

7    right to job security."  *White v. State*, 131 Wash. 2d 1, 20 (1997).

8        It is undisputed that after Plaintiff was placed on paid administrative leave

9    and received all benefits under her one-year contract, after which the contract was

10   not renewed.  ECF No. 50 at 31.  Plaintiff attempts to draw a parallel to the

11   situation in *Korslund*, where the court found that a jury could find an employee

12   permanently left his job where he received full salary and benefits up to a certain

13   point, proceeded to receive only disability payments, then only unpaid medical

14   leave before ultimately receiving unemployment benefits.  *Korslund*, 121 Wash.

15   App. at 315-16.  That case is clearly distinguishable.  The plaintiff in that case did

16   not continue to receive full salary and benefits through his employment as he had

17   to go on unpaid medical leave and eventually received unemployment benefits.

18   Here, Plaintiff received all benefits that were due under her one-year contract.  As

19   discussed *supra*, she was not entitled to challenge her non-renewal as a non-

20

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT
DEFENDANTS' MOTION FOR LEAVE TO FILE DECLARATION ~ 56

1 certificated employee.  No reasonable jury could find that she was discharged.

2 Therefore, Defendants are entitled to summary judgment on this claim.

3 **K.  Breach of Contract**

4       Defendants move for summary judgment on Plaintiff's breach of contract

5 claim on the grounds that the Letter of Intent was erroneous, the modified Letter

6 entitled Plaintiff to thousands more in salary, and Plaintiff was paid in full for her

7 one-year contract.  ECF No. 45 at 43.  Plaintiff argues that Defendants ignore the

8 claim set out in the Third Amended Complaint and that Defendants should be

9 equitably estopped from claiming a Collective Bargaining Agreement ("CBA") did

10 not existed.  ECF No. 50 at 33-34.  In reply, Defendants argue that Plaintiff could

11 not have assented to terms in a CBA that does not exist.  ECF No. 55 at 9-10.

12       Under Washington law, a plaintiff "must prove a valid contract between the

13 parties, breach, and resulting damage." *Lehrer v. State, Dep't of Soc. & Health*

14 *Servs.*, 101 Wash. App. 509, 516 (2000) (internal citation omitted).  There must be

15 mutual assent to any terms that are incorporated by reference so that it is "clear that

16 the parties to the agreement had knowledge of and assented to the incorporated

17 terms."  *Burnett v. Pagliacci Pizza, Inc.*, 196 Wash. 2d 38, 49 (2020) (internal

18 citation and quotation omitted).  "Mutual assent is gleaned from outward

19 manifestations and circumstances surrounding the transaction."  *Id.* at 50.

20 //

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT
DEFENDANTS' MOTION FOR LEAVE TO FILE DECLARATION ~ 57

1    Here, Plaintiff provides a copy of the CBA that she "[u]pon arriving at YSD

2    [she] reviewed what [she] understood was the operative CBA" referenced in her

3    contract.  ECF No. 52 at 7, ¶ 18.  However, the CBA is between the "Yakima

4    Principals' and Directors' Associations and Yakima Public Schools."  ECF No. 52-

5    2.  The CBA plainly states that the CBA applies to administrators who "are not

6    recognized by the superintendent as members of the principals' or

7    assistant/associate superintendents' group."  ECF No. 52-2 at 6, ¶ 1.2(B).

8    There is no evidence that Plaintiff reviewed a CBA or was aware of any

9    such terms incorporated at the time she signed her employment contract.  Plaintiff

10   only reviewed a CBA upon her arrival to YSD, a CBA that expressly does not

11   apply to her.  ECF No. 52 at 7, ¶ 18; ECF No. 52-2 at 6, ¶ 1.2(B).  Because such a

12   CBA did not in fact exist, Plaintiff did not have had knowledge of the terms she

13   attempts to incorporate into her contract.  Therefore, there is no mutual assent to a

14   non-existent CBA that was referenced in her employment contract.

15   Plaintiff also asserts that Defendants should be equitably estopped from

16   "changing its position" because YSD contended that a CBA did not exist for the

17   first time in deposition testimony.  ECF No. 50 at 34.  Affirmative defenses are not

18   waived if the plaintiff is not prejudiced where such a defense is raised for the first

19   time on summary judgment.  *See Camarillo v. McCarthy*, 998 F.2d 638, 639 (9th

20   Cir. 1993).  There is no evidence that Defendants "changed" positions regarding

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT
DEFENDANTS' MOTION FOR LEAVE TO FILE DECLARATION ~ 58

1    the CBA merely because they asserted that it did not exist for the first time at a

2    deposition.  Plaintiff was not unfairly prejudiced when there is no evidence that

3    any CBA ever applied to her.  Defendants are entitled to summary judgment on

4    this claim.

5    **L.  Public Records Act**

6         Defendants move for summary judgment on Plaintiff's Public Records Act

7    ("PRA") claim on the grounds that the claim is not suitable for adjudication in

8    federal court, the claim should be remanded to state court, and Plaintiff should not

9    benefit from her "abusive records requests."  ECF No. 45 at 37-38.  Plaintiff argues

10   federal courts in this District have decided PRA claims and that Defendants' claim

11   of "abusive records request" does not exist as an affirmative defense.  ECF No. 50

12   at 35.

13        Defendants do not substantively address Plaintiff's PRA claims.  As

14   discussed *infra*, only state law claims survive summary judgment.  As such, the

15   Court declines supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) on this

16   purely state law issue.  The PRA claim will be better addressed in state court.

17   **M. Voluntary Dismissal**

18        In response to Defendants' motion for summary judgment, Plaintiff

19   withdrew her defamation and intentional infliction of emotional distress claims.

20   ECF No. 50 at 35.  Therefore, summary judgment on these claims is appropriate.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT
DEFENDANTS' MOTION FOR LEAVE TO FILE DECLARATION ~ 59

### N.  Supplemental Jurisdiction

Supplemental jurisdiction may be raised by the parties or *sua sponte* by the Court.  *See Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 n.3 (9th Cir. 1997) (en banc).  A federal court has supplemental jurisdiction over pendent state law claims to the extent they are "so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy…." 28 U.S.C. § 1367(a).  "A state law claim is part of the same case or controversy when it shares a 'common nucleus of operative fact' with the federal claims and the state and federal claims would normally be tried together." *Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004) (internal citation omitted).

Once the court acquires supplemental jurisdiction over state law claims, the court may decline to exercise jurisdiction under several circumstances, including where "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors … will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988), *superseded on other grounds by statute as stated in Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010).  "[D]istrict courts may decline to exercise jurisdiction over supplemental state law claims in the interest of judicial economy, convenience, fairness and

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT
DEFENDANTS' MOTION FOR LEAVE TO FILE DECLARATION ~ 60

1   comity." *Smith v. Lenches*, 263 F.3d 972, 977 (9th Cir. 2001) (citing *City of*

2   *Chicago v Int'l Coll. of Surgeons*, 522 U.S. 156, 172-73 (1997)).

3        Here, the Court determined that Defendants are entitled to summary

4   judgment on Plaintiff's federal claims over which the Court had original

5   jurisdiction and some of those state claims for which the Court has supplemental

6   jurisdiction; this triggers the discretion to decline supplemental jurisdiction on the

7   remaining state claims. *See Acri v. Varian Assocs., Inc.*, 114 F.3d at 1001. In the

8   interest of judicial economy, convenience, fairness and comity, the Court

9   determines that the state law claims based on the Washington Law Against

10   Discrimination and Washington Public Records Act would be better addressed in

11   state court. The parties will not be overly inconvenienced where this case is at the

12   summary judgment stage and the parties' completed discovery and briefing can be

13   utilized if Plaintiff chooses to refile in state court. Further, in fairness to Plaintiff,

14   the period of limitation for Plaintiff's remaining state law claims is tolled for thirty

15   days after the claims are dismissed unless Washington law provides for a longer

16   tolling period. *See* 28 U.S.C. § 1367(d). For these reasons, the Court declines to

17   exercise supplemental jurisdiction over Plaintiff's state law claims.

18   **ACCORDINGLY, IT IS HEREBY ORDERED:**

19        1. Defendants' Motion for Summary Judgment (ECF No. 45) is

20           **GRANTED in part** and **DENIED in part**. Judgment shall be entered in

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT
DEFENDANTS' MOTION FOR LEAVE TO FILE DECLARATION ~ 61

favor of Defendants on the 42 U.S.C. § 1983 claims, the Family and

Medical Leave Act claims, the Washington State Wage Rebate Act

claims, Equal Pay Act claims, the Washington Discharge in Violation of

Public Policy claims, the breach of contract claims, the defamation

claims and intentional infliction of emotional distress claims.

2. Plaintiff's remaining two state law claims brought under the Washington

Law Against Discrimination and Washington Public Records Act are

**DISMISSED** under 28 U.S.C. § 1367(c)(3) **without prejudice**.

3. Defendants' Motion for Leave to File the Declaration of Karen Hovis

(ECF No. 66) is **DENIED as moot**.

4. All remaining motions, hearings, and trial are **VACATED as moot**.

The District Court Executive is directed to enter this Order, enter Judgment

accordingly, furnish copies to counsel, and **CLOSE** the file.

DATED March 26, 2020.



THOMAS O. RICE
United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT
DEFENDANTS' MOTION FOR LEAVE TO FILE DECLARATION ~ 62